IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, CENTER FOR BIOLOGICAL DIVERSITY, and PRAIRIE HILLS AUDUBON SOCIETY, | Case No.  1:16-CV-83-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| JANICE SCHNEIDER, Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE, | |
| Defendants. | |

## INTRODUCTION

The Court has before it a motion to sever and transfer filed by defendants Bureau of Land Management and the Forest Service.  The motion is fully briefed and at issue.  For the reasons explained below, the Court will deny the motion.

## LITIGATION BACKGROUND

In 2015, the Forest Service joined the Bureau of Land Management (BLM) in carrying out the National Planning Strategy to update the protections for the sage grouse.  The Strategy divided the sage grouse's range in two Regions and 15 Sub-Regions.  For each Sub-Region, the BLM Field Office in that geographic area prepared an Environmental Impact Statement (EIS).  From each EIS, a Record of Decision (ROD) was made, leading to amendments or revisions of that area's Resource Management Plan

(RMP).  Thus, the National Planning Strategy resulted in a total of 15 EISs and 5 RODs that amended 98 RMPs.  As a result of the National Planning Strategy, the Fish and Wildlife Service issued a decision that the listing of the sage grouse was not warranted under the Endangered Species Act.  *See* 80 Fed. Reg. 59,858 (Oct. 2, 2015).

Four different environmental groups have brought this lawsuit to challenge all 15 EISs that govern land covering ten western states.  The gist of plaintiffs' lawsuit is that the BLM and Forest Service artificially minimized the harms to sage grouse by segmenting their analysis into 15 sub-regions without conducting any range-wide evaluation – the agencies looked at the trees without looking at the forest, so to speak. The plaintiffs have brought their claims under the National Environmental Policy Act (NEPA), the Federal Land Policy and Management Act (FLPMA), and the National Forest Management Act (NFMA).

More specifically, plaintiffs allege that each EIS failed to consider, among other things, (1) the cumulative impacts of the activities allowed by the 5 RODs across the entire range of the sage grouse; (2) the effects of climate change, and (3) whether isolated sage grouse populations would be connected with key populations across their entire range.  These three claims listed above apply to each EIS and will be referred to by the Court as plaintiffs' "overarching" claims, for ease of reference.  In support, plaintiffs will be submitting the entire Administrative Record for all 15 EISs.

There are five other courts hearing challenges to some of the same EISs and RMPs challenged here.  Courts in Utah, Wyoming, North Dakota, Nevada, and Washington

D.C. are currently considering these challenges.[1]  Each of those cases was brought by entities seeking to remove protections for sage grouse.  Environmental groups have intervened as defendants in most of the cases.  However, all of those groups limit their arguments to countering the attempt to overturn sage grouse protections; none of them make the overarching claims made by plaintiffs here seeking even greater protections for sage grouse.[2]

The BLM has filed a motion to sever and transfer plaintiffs' claims to the other five courts.  For those claims challenging RMPs in states where litigation has been filed – Utah, Nevada, Wyoming, and North Dakota – the BLM seeks to carve off plaintiffs' claims pertaining to each of those states and transfer them there.  For example, plaintiffs' challenge to the Utah RMP would be transferred to the Utah litigation, the challenge to the Nevada RMP would be transferred to the Nevada litigation, and so on.  For those claims challenging RMPs in states where no litigation has been filed – Colorado, Oregon, Montana, and South Dakota – the BLM proposes transferring them to the Washington D.C. litigation.

---

[1] *Western Energy Alliance v. U.S.*, No. 16-cv-112 (D.N.Dakota); *Herbert v. Jewell,* No. 16-cv-101 (D. Utah); *Western Exploration v. United States,* No. 15-cv-491 (D. Nev.); *Wyoming Stock Growers v. U.S.,* No. 15-cv-181 (D. Wyo.); *Wyoming Coalition v. U.S.,* No. 16-cv-41 (D. Wyo); *American Exploration & Mining v. U.S.,* No. 16-cv-737 (D.D.C.).  A second case was filed in Washington D.C. but was recently dismissed as will be discussed further below.  *See Otter v. Jewell,* No. 15-cv-1566 (D.D.C.).

[2] *See Western Exploration, supra, Motion to Intervene (Dkt. No. 31); Herbert, supra, Response to Complaint (Dkt. No. 40-13); Wyoming Coalition, supra, Motion to Intervene (Dkt. No. 35-1); Wyoming Stock Growers, supra, Motion to Intervene (Dkt. No. 50-1).*  No environmental groups have sought to intervene in the North Dakota or Washington D.C. cases.

**Memorandum Decision & Order – page 3**

Finally, the BLM proposes transferring plaintiffs' challenges to the Idaho RMP to the Washington D.C. litigation known as *Otter v. Jewell*, brought by the State of Idaho to overturn some plan provisions as over-protective. While the BLM concedes that plaintiffs' Idaho challenge could be litigated here, it argues that "the *Otter* case was filed earlier and has already proceeded to summary judgment briefing [so] it would be more efficient to brief additional claims regarding that sub-region in the District of Columbia." *See BLM Brief (Dkt. No. 46-1)* at p. 4. But the *Otter* case was recently dismissed, as will be discussed further below. *See Otter v. Jewell,* 2017 WL 61924 (D.D.C. Jan. 5, 2017).

The BLM argues that leaving plaintiffs' claims in this Court will risk exposing the agency to conflicting decisions if, say, the Utah court's evaluation of the Utah RMP differs from that of this Court. A transfer will also, the BLM asserts, send most of the RMP challenges to courts sitting in the state affected by the RMP at issue.

## ANALYSIS

This Court faced similar issues in *WWP v. Salazar,* 2009 WL 1299626 (D.Idaho May 7, 2009). There, WWP claimed that the BLM was not protecting the sage grouse, and challenged 18 Environmental Impact Statements (EISs) prepared by 18 separate BLM offices in six different states: (1) Idaho; (2) Montana; (3) Utah; (4) California; (5) Wyoming; and (6) Nevada. Each EIS supported a Resource Management Plan (RMP) governing that BLM district. WWP argued that each of these 18 EISs suffered from the same two flaws. First, each EIS allegedly rejected a "no grazing" alternative as unlawful – that is, each agency concluded that it had no legal authority to consider a "no grazing"

alternative.  Second, each EIS allegedly failed to consider the cumulative effects of livestock grazing and climate change, among other impacts.

The BLM sought to either dismiss the entire action or transfer each non-Idaho claim to the state corresponding to the RMP.  The BLM pointed out that the alleged shortcomings of the RMPS – rejecting a no-grazing alternative and ignoring impacts of grazing and climate change – had never been expressly adopted by the BLM and applied across-the-board to each EIS.  That precluded WWP from making a generic argument that avoided evaluation of each separate EIS, and required that the action be dismissed, argued the BLM, citing *Lujan v. National Wildlife Federation,* 497 U.S. 871 (1990).  The Court rejected that argument, however, holding that WWP's complaint made just the sort of discrete individualized challenge required by *Lujan:* "The complaint, read broadly, challenges the separate decisions of each BLM office" and "is making a series of individual challenges to discrete final agency actions, each of which will require analysis of the applicable administrative record."  *Id.* at *1.

Finding that it had jurisdiction, the Court turned to the BLM's venue challenge. The BLM argued that the non-Idaho RMPs should be transferred to courts "closer to home."  The Court rejected that argument:

> [T]he issues do not break down neatly into "home" judicial districts. A key issue in this case is whether the BLM considered the cumulative impact of environmental factors acting in a widespread area stretching beyond RMP boundaries.  For example, WWP alleges that each of the RMPs failed to consider the cumulative impacts on particular sage grouse populations, some of which are found in regions governed by several different RMPs. Moreover, WWP alleges that all the RMPs failed to address the cumulative impact of global warming, an impact that may extend beyond the boundaries of a judicial district . . . .  [T]hose allegations may require a court to analyze

Memorandum Decision & Order – page 5

> effects beyond the borders of its judicial district. Thus, the traditional desire
> to let disputes be resolved in their home court has less weight here where the
> resolving court may well be considering cumulative impacts in other judicial
> districts.

*Id.* at *3 (citations omitted).  In conclusion, the Court denied the BLM's motion to

dismiss or to transfer for 16 of the 18 RMPs, dismissing two on grounds not applicable

here.  Thereafter, to make a sprawling case more manageable, the parties

agreed to break the 16 remaining RMPs into subgroups and litigate them sequentially.

The first subgroup consisted of the RMPs for Craters of the Moon (Idaho) and Pinedale

(Wyoming).  The Court found that both RMPs failed to comply with NEPA and FLPMA.

*See WWP v. Salazar,* 2011 WL 4526746 (D. Idaho Sept. 28, 2011).  The Court remanded

both RMPs to the BLM to correct the deficiencies.  The Court gave the agencies

additional time to align the two RMPs with the National Planning Strategy that is the

focus of the present case.  The BLM has completed its revaluation of the Pinedale RMP

under the National Planning Strategy and is currently doing the same for the Craters of

the Moon RMP.

There are substantial similarities between *Salazar* and the present case.  In both

cases, plaintiffs made overarching claims that applied equally to each EIS and RMP

challenged, and required a range-wide evaluation that extended beyond the boundaries of

any particular court.  These similarities make a strong case for applying *Salazar's* result

here.  But this conclusion, the BLM counters, fails to recognize a development that has

occurred since *Salazar,* namely the filing of litigation in the five other courts.  The BLM

**Memorandum Decision & Order – page 6**

argues that there is a potential for conflicting rulings if this Court refuses to sever each claim and transfer it to the state where the RMP was developed.

The Court disagrees.  As the litigation is now postured, this Court is the only court considering the plaintiffs' overarching claims in light of the entire Administrative Record.  Thus, the BLM is not exposed to conflicting decisions on plaintiffs' overarching claims as the litigation is now positioned.  But transferring the overarching claims to five different courts will force plaintiffs to make five identical arguments before five separate judges, increasing the potential for conflicting rulings while placing a substantial burden on plaintiffs.  And one of the cases that the BLM identified as being able to absorb a transfer of some of plaintiffs' claims was recently dismissed.  *Otter v. Jewell,* 2017 WL 61924 (D.D.C. Jan. 5, 2017).  The other cases were all brought by entities seeking to remove sage grouse protections.  Adding plaintiffs' completely contrary claims to each of those cases would dramatically change and expand that litigation, escalating costs to all parties that could largely be avoided if plaintiffs were allowed to make their claims in a single forum.  The goals of promoting efficiency, avoiding conflicting results, and minimizing the costs and prejudice to the parties, would all be maximized by keeping plaintiffs' claims in this Court.

The Court recognizes that another court reached a different result.  *See Western Energy Alliance vs. United States,* 1:16-CV-112 (D.N.D.), *Order (Dkt. No. 48) (issued Dec. 19, 2016).*  There, plaintiffs representing the oil and natural gas industry challenged several RMPs on the ground that their sage grouse protections harmed their industries. The BLM responded with a motion to sever and transfer.  The court granted the motion,

finding that a transfer would increase efficiency and avoid conflicting rulings.  But several factors distinguish that case from this one.  First, the court there did not have ongoing litigation like *Salazar*.  Second, the court found it "curious" that plaintiffs would file suit in North Dakota, which "contains only a small portion of the Sage-Grouse's habitat," and concluded that the lawsuit merely "contributed to the proliferation of cases . . . in multiple federal courts," *id.* at p. 8, a conclusion that does not apply here.  Finally, while the plaintiffs in that case were making claims on behalf of the oil industry that had been made elsewhere, the plaintiffs here are making unique overarching claims that are not made elsewhere.  For all these reasons, the Court finds *Western Energy* distinguishable.

The BLM, and the intervenors, bring other arguments, but they have been addressed by *Salazar* and the Court will not plow old ground here.[3]  The Court finds that *Salazar's* analysis should be applied here and the motion denied.[4]

## ORDER

---

[3] The Utility Intervenors are in a unique posture.  They are building transmission lines that will cross four western states:  Oregon, Idaho, Wyoming, and Utah.  Their project was granted an exemption from the National Planning Strategy pursuant to a Presidential Priority Designation, and is undergoing its own separate environmental review.  In this lawsuit plaintiffs challenge that exemption.  The Utilities ask that plaintiffs' challenge to the exemption be severed and transferred to the Washington D.C. litigation.  The Court will deny that request for two reasons.  First, there is no argument that this Court lacks jurisdiction over the exemption issue.  Second, the efficiency and convenience factors are largely a wash.  That court has long experience in administrative matters; this court has long experience in environmental matters.  Trying the exemption issue there will inconvenience plaintiffs; trying it here will inconvenience witness from there.  This tie is broken by the importance granted to Plaintiffs' choice of forum, and that compels the Court to deny the Utilities' request to transfer the exemption issue.

[4] The Court will grant Utah's motion to file an amicus brief, and will deny plaintiffs' motion to strike the intervenors' briefs.

**Memorandum Decision & Order – page 8**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to sever and transfer (docket no. 46) is DENIED.

IT IS FURTHER ORDERED, that the motion to file amicus brief (docket no. 61) is GRANTED, and the motion to strike intervenors' briefs (docket no. 70) is DENIED.

DATED: March 3, 2017

B. Lynn Winmill
Chief Judge
United States District Court