Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, CENTER FOR BIOLOGICAL DIVERSITY, and PRAIRIE HILLS AUDUBON SOCIETY,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID BERNHARDT, Acting Secretary of Interior; JOSEPH R. BALASH,* Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE,<br><br>*Defendants*. | Case No. 1:16-cv-00083-BLW<br><br>**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT**<br><br>**Expedited Decision Requested** |

\* *Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

## INTRODUCTION

Plaintiffs respectfully move the Court for leave to file a First Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d). The [Proposed] First Supplemental Complaint is submitted herewith as Attachment A.

Opening Brief on Motion for Leave to File First Supplemental Complaint --                     1

As set forth in the [Proposed] First Supplemental Complaint and explained further below, Plaintiffs seek to halt and reverse the Trump Administration's recent actions to roll back greater sage-grouse protections adopted in the 2015 Greater Sage-Grouse Plans, which are the subject of the original Complaint in this action, ECF No. 1.

Specifically, Plaintiffs move to supplement the Complaint to challenge the six Records of Decisions (RODs) issued by Defendant Bureau of Land Management (BLM) on March 15, 2019, that rescind or weaken land management protections for greater sage-grouse in Idaho and six other states, based on December 2018 Final Environmental Impact Statements (Final EISs). *See* [Proposed] First Supplemental Complaint, First through Fourth Supplemental Claims for Relief.

Plaintiffs also seek to challenge BLM's related October 2018 cancellation of the proposed withdrawal of 10 million acres of Sagebrush Focal Areas (SFAs)—the single most important sage-grouse habitats—from mineral entry and exploitation; and request declaratory relief holding that BLM has legal authority under FLPMA and other statutes to require compensatory mitigation populations from discretionary actions authorized on the public lands and federal mineral estate, contrary to BLM's elimination of compensatory mitigation under the recent plan amendments. *See* [Proposed] First Supplemental Complaint, Fifth and Sixth Supplemental Claims for Relief.

The Trump Administration falsely asserts that these actions build upon and improve the 2015 Sage-Grouse Plans, but in truth the Administration is gutting key elements of the 2015 Plans and will hasten the sage-grouse's decline toward extinction. Plaintiffs seek to challenge these decisions as unlawful under the National Environmental Policy Act (NEPA), Federal Land Policy and Management Act (FLPMA), and Administrative Procedure Act (APA).

Opening Brief on Motion for Leave to File First Supplemental Complaint --    2

Because the Trump Administration's actions to weaken sage-grouse protections on federal lands will allow substantial new energy development and other actions to further destroy, degrade, and fragment sage-grouse habitats and populations, Plaintiffs intend to seek a preliminary injunction to maintain the status quo and prohibit implementation of BLM's recent Sage-Grouse Plan Amendments, and accordingly ask for expedited decision on this motion.

## STATEMENT OF RELEVANT FACTS

### I.     Procedural Background

Plaintiffs filed the Complaint in this action on February 25, 2016, to challenge the final Environmental Impact Statements (EISs), Records of the Decision (RODs), and federal land use plan amendments that BLM and Forest Service approved in September 2015 as the culmination of their National Greater Sage-Grouse Planning Strategy (jointly called the "2015 Sage-Grouse Plans" herein). *See* Complaint ¶¶ 1–13, 84–133, ECF No. 1.

The Complaint acknowledged that the 2015 Sage-Grouse Plans represent a step forward in sage-grouse conservation, but identified legal, scientific, and factual deficiencies underscoring that they do not go far enough to ensure sage-grouse conservation into the future. These include Defendants' failure to take a range-wide "hard look" at sage-grouse populations, habitats, threats, and conservation needs; failure to address likely impacts of climate change upon sage-grouse habitats and populations; failure to prioritize the designation of Sage-Grouse "Areas of Critical Environmental Concern" (ACECs) under FLPMA; and adoption of inadequate buffers and other management measures to protect key sage-grouse habitats and populations from major threats, including energy development, livestock grazing, rights-of-way, and other human actions. *Id.* ¶¶ 134–312.

On June 1, 2017, the Court approved a Case Management Order setting litigation deadlines, ECF No. 37; and after agreed extensions of time, Federal Defendants submitted the Administrative Record for the 2015 Sage-Grouse Plans in January 2018, ECF Nos. 87–88. Under the Case Management Order, Plaintiffs had a period of time to review and object to the adequacy of the Administrative Record, but the parties subsequently extended that deadline by Court-approved stipulation. *See* ECF Nos. 92–93.

Numerous other lawsuits were filed in at least five other district courts by states, local governments, and/or industries seeking to reverse and set aside the 2015 Sage-Grouse Plans. On March 3, 2017, this Court denied Federal Defendants' motion to sever and transfer Plaintiffs' claims to those other jurisdictions. *See* ECF No. 86.

However, because the incoming Trump Administration began the process to review and revise the 2015 Sage-Grouse Plans soon thereafter, further litigation on Plaintiffs' challenges to the 2015 Sage-Grouse Plans in this case has effectively been on hold pending further final actions on the Plans. *See* ECF Nos. 94–116.

Specifically, on June 7, 2017, then-Interior Secretary Zinke issued Secretarial Order (SO) 3353, "Greater Sage-Grouse Conservation and Cooperation with Western States," which directed that a DOI "Sage-Grouse Review Team" be assembled to review the 2015 Sage-Grouse Plans and recommend modifications to "enhance State involvement," among other directives. On July 11, 2017, Federal Defendants advised this Court of SO 3353, and submitted an "Unopposed Motion to Stay Litigation" for 90 days, to evaluate what additional steps might be taken with respect to the 2015 Sage-Grouse Plans. *See* ECF No. 94. The Court granted the requested 90-day stay of litigation on July 13, 2017. ECF No. 96.

On August 4, 2017, the DOI Sage-Grouse Review Team issued its "Report In Response To Secretarial Order 3353," which made recommendations for numerous modifications of the 2015 Sage-Grouse Plans to relax restrictions on oil, gas, and other fossil fuel development in sage-grouse habitats. The same day, then-Secretary Zinke issued a memorandum directing BLM to "immediately begin implementing the short- and long-term recommendations in the Report."

BLM thus published notice in the Federal Register in October 2017, announcing that it would initiate a new NEPA/land use planning process to "consider the possibility of amending some, all or none" of the 2015 Sage-Grouse Plans, and invited public scoping comments. *See* 82 Fed. Reg. 47,248 (Oct. 11, 2017).

In a Status Report filed October 11, 2017, Federal Defendants notified the Court of the August 2017 DOI Sage-Grouse Team Report and BLM's Federal Register notice, and indicated they would seek to continue the 90-day litigation stay granted in July 2017. *See* ECF No. 98.

On October 25, 2017, Plaintiffs and Federal Defendants submitted a Stipulation agreeing that: (a) Federal Defendants were likely to further clarify the scope of the planning process announced by BLM on October 11, 2017; (b) the parties would work over the next 90 days to informally resolve disputes over the Administrative Record; and (c) the parties would confer and submit a plan for further litigation within 90 days. *See* ECF No. 100.

Unlike the National Greater Sage-Grouse Planning Strategy, where BLM and the Forest Service jointly conducted the NEPA/land use planning process to develop the 2015 Sage-Grouse Plan, the Forest Service is pursuing a separate process to weaken the 2015 Plans under the Trump Administration. The Forest Service thus published its own scoping notice on November 21, 2017 "to solicit public comments on greater sage-grouse land management issues that could warrant land management plan amendments." 82 Fed. Reg. 55,346 (Nov. 21, 2017).

On January 22, 2018, Federal Defendants and Plaintiffs submitted a joint Status Report to the Court reciting the BLM and Forest Service scoping notices, and notifying the Court that the parties agreed to confer over the next 30 days about how the new planning processes might affect this litigation. ECF No. 104.

The parties continued to monitor the new BLM and Forest Service planning processes and submitted further joint Status Reports to the Court on February 22, 2018 (ECF No. 105), March 26, 2018 (ECF No. 106), and May 15, 2018 (ECF No. 109), which updated the Court on the status of the new planning processes and agreed that moving forward with litigation under the original Complaint should be deferred as those processes could affect Plaintiffs' challenges to the 2015 Sage-Grouse Plans.

On May 2, 2018, BLM released six Draft Environmental Impact Statements (Draft EISs) and draft proposed plan amendments to revise the 2015 Sage-Grouse Plans in Idaho, Colorado, Wyoming, Utah, Nevada/Northeastern California, and Oregon, and allowed a 90-day public comment period. *See* 83 Fed. Reg. 19,801 (May 4, 2018).

The Forest Service has lagged behind BLM in its sage-grouse plan amendments. It published a "Supplemental Notice of Intent" for its scoping period in June 2018, *see* 83 Fed. Reg. 28,608 (June 20, 2018), and on October 5, 2018 released Draft EISs for proposed plan amendments revising its 2015 Sage-Grouse Plans in Idaho, Nevada, Utah and Wyoming, and allowed a public comment period until January 3, 2019. *See* 83 Fed. Reg. 50,331 (Oct. 5, 2018).

On October 12, 2018, Federal Defendants and Plaintiffs submitted a Joint Status Report advising the Court of the recent BLM and Forest Service draft EISs and proposed land use plan changes. The parties agreed to confer and submit a further status report or plan for litigation by January 10, 2019. ECF No. 113.

On December 7, 2018, BLM published notice of its Final Environmental Impact Statements (Final EISs) and proposed plan amendments to amend or revise BLM's 2015 Sage-Grouse Plans in Idaho, Northwest Colorado, Wyoming, Utah, Nevada/Northeastern California, and Oregon, and opened 30-day public protest and 60-day Governor consistency review periods. *See* 83 Fed. Reg. 63,161 (Dec. 7, 2018).

Due to the federal government shutdown, the Court issued a docket order on January 1, 2019 staying the case under General Order 339. ECF No. 115. After the shutdown ended, the Court issued a further order extending case management deadlines by 35 days. ECF No. 116.

On March 15, 2019, now-Acting Interior Secretary Bernhardt announced that BLM issued six Records of Decision ("BLM 2019 RODs") and adopted final Resource Management Plan Amendments to BLM's 2015 Sage-Grouse Plans in Idaho, Colorado, Wyoming, Utah, Nevada/Northeastern California, and Oregon, based on the December 2018 Final EISs. On March 20, 2019, BLM published Notices of Availability of these 2019 BLM RODs, and stated that the plan amendments were "effectively immediately." 84 Fed. Reg. 10,322-10,330 (Mar. 20, 2019).

Because BLM's 2019 RODs are effective now and substantially weaken protections for sage-grouse in Idaho and other sage-grouse states, Plaintiffs are moving quickly to challenge those RODs and their Final EISs, plus the related actions by Federal Defendants to roll back sage-grouse protections identified in the [Proposed] First Supplemental Complaint.

## II.     Plaintiffs' Proposed Supplemental Claims

Plaintiffs' [Proposed] First Supplemental Complaint alleges in detail how DOI and BLM have moved aggressively to implement President Trump's self-styled "energy dominance agenda" for the public lands, which he launched shortly after taking office, to weaken sage-

grouse protections from oil and gas and other industrial development. *See* [Proposed] First Supplemental Complaint ¶¶ 21–24.

The Trump Administration contends—falsely—that it is "improving" the 2015 Sage-Grouse Plans by adding "flexibility" and deferring more to state management plans. In truth, DOI and BLM are heeding demands by the oil and gas and other industries (and their state allies) to gut key sage-grouse protections identified by the National Greater Sage-Grouse Planning Strategy and adopted in the 2015 Sage-Grouse Plans. *Id.* ¶¶ 42–44.

The focus of Plaintiffs' supplemental claims is on the changes to BLM's 2015 Sage-Grouse Plans that BLM just approved through the March 2019 RODs and December 2018 Final EISs that amended BLM's sage-grouse plans in Idaho and six other states. In July 2017, the oil and gas industry identified a "wish list" of plan revisions it sought to relax restrictions on oil and gas leasing and development in sage-grouse habitats; and in August 2017, a DOI "Task Force" composed of industry supporters (not sage-grouse experts) recommended that same wish list of changes to the Plans. *Id.*

BLM's May 2018 Draft EISs and December 2018 Final EISs only considered the proposed changes to rescind or weaken sage-grouse protections from the 2015 Sage-Grouse Plans; BLM refused to consider any changes to improve sage-grouse protections, even while denying that weakening the Plans would harm sage-grouse. By mispresenting the facts and science, failing to acknowledge the true impacts of the proposed plan changes, and refusing to consider any other alternatives, BLM thus violated NEPA in multiple ways, as detailed in the [Proposed] First Supplemental Complaint. *Id.* ¶¶ 143–53.

BLM also violated FLPMA and the APA in adopting the March 2019 RODs, including by violating FLPMA's requirement that it prioritize the designation and protection of ACECs. *Id.*

¶¶ 164–70. The 2019 Plan Amendments thus suffer from many of the same legal defects identified by Plaintiffs in the 2015 Sage-Grouse Plans.

The [Proposed] First Supplemental Complaint also challenges closely related actions by the Trump Administration to dismantle sage-grouse protections, which it undertook through separate decisions lacking any public notice, comment, or environmental review.

First, on October 11, 2018, BLM published a "Notice of Cancellation of Withdrawal Application and Withdrawal Proposal and Notice of Termination of Environmental Impact Statement for the Sagebrush Focal Area Withdrawal in Idaho, Montana, Nevada, Oregon, Utah and Wyoming," 82 Fed. Reg. 47,248 (Oct. 11, 2017), which abruptly abandoned BLM's proposed withdrawal of 10 million acres of public lands within SFAs for mineral entry and exploitation. The National Greater Sage-Grouse Planning Strategy and the 2015 Sage-Grouse Plans identified the need for such mineral withdrawal in the SFAs to protect sage-grouse from mining impacts that the Plans themselves could not adequately regulate.  The U.S. Fish and Wildlife Service specifically cited the SFA mineral withdrawal in its October 2015 Endangered Species Act "not warranted" finding that the new sage-grouse conservation measures adopted adequate regulatory mechanisms to address the threats facing sage-grouse. *Id.* ¶¶ 49–53. By abruptly halting and abandoning the SFA mineral withdrawal, BLM effectively chose the "no action" alternative without even completing the NEPA process, in violation of NEPA and the APA. *Id.* ¶¶ 179–87.

Second, the Trump Administration has rescinded compensatory mitigation policies that were adopted under the Obama Administration, and reflected in the 2015 Sage-Grouse Plans, to offset unavoidable impacts of oil and gas or other industrial development on the public lands and sensitive species, including sage-grouse. BLM has relied on a plainly-erroneous legal reading of

its authorities under FLPMA and other statutes to contend it lacks statutory authority to require compensatory mitigation, for which Plaintiffs seek declaratory relief. *Id.* ¶¶ 188–93.

Unlike the 2015 Sage-Grouse Plans, which Plaintiffs acknowledge represent a step forward in sage-grouse conservation on the public lands, the recent Trump Administration actions to weaken or rescind sage-grouse protections will allow extensive new oil and gas development and other human actions to destroy, degrade, or fragment sage-grouse habitats, and threaten remaining sage-grouse populations. The Trump Administration has refused to acknowledge that sage-grouse populations have continued to decline in many areas in recent years, and falsely asserts that its actions will only help—not harm—sage-grouse. Plaintiffs thus will seek preliminary injunctive relief from this Court to maintain the 2015 Sage-Grouse Plans in effect until their supplemental claims in the [Proposed] First Supplemental Complaint can be adjudicated on the merits.

As explained below, the [Proposed] First Supplemental Complaint is proper under F.R.Civ.P. 15(d) and the facts before the Court in this litigation, and this Motion for Leave to File First Supplemental Complaint should be granted on an expedited basis so that Plaintiffs can pursue injunctive relief over their supplemental claims.

## ARGUMENT

Federal Rule of Civil Procedure 15(d) governs supplemental pleadings, and it states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

*See* Fed. R. Civ. P. 15(d).

District courts have broad discretion under Rule 15(d) in determining whether to allow a supplemental complaint. *Keith v. Volpe*, 858 F.2d 467, 475 (9th Cir. 1988). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981).

To that end, courts "liberally construe Rule 15(d) absent a showing of prejudice to the defendant." *Keith*, 858 F.2d at 475. The Ninth Circuit has directed that supplemental pleadings are "favored" and "they ought to be allowed as of course, unless some particular reason for disallowing them appears." *Id.* at 473 (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963)).

These standards for Rule 15(d) supplemental pleadings are abundantly satisfied here. As discussed above, the Complaint in this case challenges the adequacy of the 2015 Sage-Grouse Plans, which BLM has now amended to further weaken them in Idaho and other states, reflecting many of the same legal flaws—NEPA and FLPMA violations—alleged in the Complaint regarding the 2015 Sage-Grouse Plans. Plaintiffs' challenges in this case have effectively been on hold while the parties awaited the results of the Trump Administration's review and amendments, which are completed now (with respect to BLM's plans) or will be soon (with respect to Forest Service plans). Supplementing the claims to address these factual developments and modify Plaintiffs' legal challenges to address the recent Trump Administration actions to weaken sage-grouse protections is exactly what Rule 15(d) is intended to allow.

It bears emphasizing that Plaintiffs' supplemental claims challenging the Trump Administration recent actions overlap closely with their claims challenging the 2015 Sage-Grouse Plans. As alleged in more detail in the [Proposed] First Supplemental Complaint, BLM's

December 2018 Final EISs and March 2019 RODs purport to modify the 2015 Sage-Grouse Plans, and incorporate the NEPA analysis for the 2015 Plans. The NEPA and FLPMA violations that Plaintiffs identified in the Complaint challenging the 2015 Sage-Grouse Plans—including the failure to take a range-wide analysis, evaluate climate change impacts, designate Sage-Grouse ACECs, or adopt adequate regulatory mechanisms to protect sage-grouse habitats and populations—thus remain live and justiciable. The December 2018 Final EISs and March 2019 RODs are even more egregious in violating NEPA, FLPMA and the APA by weakening the 2015 Sage-Grouse Plans in many respects, even while Defendants deny they are doing so. Allowing Plaintiffs' supplemental claims is necessary to ensure that their challenges to the 2015 Plans and the subsequent Trump Administration decisions weakening them are adjudicated together in this case.

In addition, leave to file the supplemental complaint is also appropriate under Rule 15(d), because this Court has developed extensive familiarity with the applicable law, science, and background of the federal sage-grouse plans through this and prior litigation. Allowing the proposed supplemental claims to proceed as part of this case would therefore serve the interests of judicial economy. *See San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of Int.*, 236 F.R.D. 491, 499 (E.D. Cal. 2006) (the court's "extensive knowledge of the relevant law, background, and scientific considerations" favored supplementation); *Tucson Herpetological Society v. Kempthorne*, 2006 WL 2788643 (D. Ariz. 2006) (allowing supplemental pleadings based on "the court's experience with the case").

Neither can Federal Defendants establish undue prejudice that would somehow caution for denial of supplementation under Rule 15(d). *See Keith*, 858 F.2d at 475 ("liberally constru[ing] Rule 15(d) absent a showing of prejudice"); *Rowe v. U. S. Fid. & Guar. Co.*, 421

F.2d 937, 944 (4th Cir. 1970) (reversing district court's denial of leave to file supplemental complaint because no prejudice to defendant was shown). As explained in the Procedural Background section above, Federal Defendants themselves sought to stay this litigation after the Trump Administration took office and began the new NEPA/land use planning revision process. Plaintiffs have agreed to effectively staying this litigation pending the results of that process, to avoid possible unnecessary litigation over challenges to the 2015 Sage-Grouse Plans as they were being amended. Now that BLM's amendments are done—and have immediate effect—it is ripe and appropriate for Plaintiffs to challenge them through the [Proposed] First Supplemental Complaint.

Finally, as noted above and the [Proposed] First Supplemental Complaint, Plaintiffs are seeking preliminary injunctive relief to halt the recent BLM RODs from taking effect, and therefore request that the Court expedite decision on this motion. Plaintiffs' counsel will communicate with the Court and opposing counsel to discuss scheduling a hearing and briefing schedule on the planned motion for preliminary injunction.

WHEREFORE, Plaintiff Western Watersheds respectfully prays that the Court grant this Motion and authorize filing of the proposed First Supplemental Complaint under Rule 15(d).

Dated this 27th day of March 2019.             Respectfully submitted,

/s/ Laurence ("Laird") J. Lucas
Laurence ("Laird") J. Lucas (ISB # 4733)
Todd C. Tucci (ISB # 6526)
Sarah Stellberg (ISB #10538)
*Advocates for the West*

Attorneys for Plaintiffs