BART M. DAVIS, Idaho Bar No. 2696
United States Attorney

CHRISTINE G. ENGLAND, California Bar No. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Tel: (208) 334-1211; Fax: (208) 334-1414
Email: Christine.England@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General

LUTHER L. HAJEK
BARCLAY T. SAMFORD
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: luke.hajek@usdoj.gov
        clay.samford@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*, | Case No. 1:16-cv-00083-BLW |
| Plaintiffs, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT** |
| BERNHARDT, Secretary of the Interior, *et al.*,[1] | |
| Defendants. | |

---

[1] Joseph R. Balash, Assistant Secretary of the Interior for Land and Minerals Management, is substituted for his predecessor in office pursuant to Fed. R. Civ. P. 25(d).

## INTRODUCTION

The Court should deny Plaintiffs Western Watersheds Project *et al.*'s Motion for Leave to File First Supplemental Complaint (ECF No. 118) because Plaintiffs seek to introduce distinct new claims into this lawsuit.  While couched as a "supplement" to Plaintiffs' previous challenge to resource management plan amendments relating to the Greater Sage-Grouse ("Sage-Grouse") issued in 2015, Plaintiffs' proposed new complaint actually challenges six new plan amendments issued by six separate Bureau of Land Management ("BLM") state offices regarding Sage-Grouse in 2019.  Plaintiffs' new complaint also differs from its prior complaint in that it seeks to vacate and enjoin the 2019 plan amendments—whereas Plaintiffs' existing complaint sought to keep the 2015 plan amendments in place.  Because Plaintiffs' claims challenging the new plan amendments challenge separate and distinct agency actions and seek different relief, they should be brought in a new lawsuit.  Plaintiffs' motion for leave should also be denied because it seeks to inject new claims unrelated to the 2015 or 2019 planning actions, and which have no relation to their original complaint.  Specifically, Plaintiffs now seek to challenge (1) a proposed withdrawal of certain Public Lands from location and entry under the Mining Law of 1872 and (2) BLM's issuance of a new policy on mitigation.  These actions are distinct from their claims against the 2015 Plan Amendments and challenges to them should be brought in a separate lawsuit.  Accordingly, the motion to supplement the complaint should be denied.

## BACKGROUND

I.   **Factual and Procedural Background**

   A.   **The 2015 Sage-Grouse Plan Amendments and Related Litigation**

In September 2015, BLM and the U.S. Forest Service ("Forest Service") (collectively, "Agencies") approved multiple land use plan amendments and revisions covering lands across

ten western states that were designed to protect the Greater Sage-Grouse and its habitat ("2015 Plan Amendments"). The 2015 Plan Amendments were coordinated at a national level, which resulted in the issuance of two records of decision ("RODs") approving plan amendments in fifteen separate sub-regions that were tailored to the particular circumstances of those sub-regions. *See* 80 Fed. Reg. 57,332 (Sept. 23, 2015) (notice of the Forest Service's Rocky Mountain Region ROD).[2] The 2015 Plan Amendments were challenged in multiple cases in several jurisdictions in addition to the case brought by Plaintiffs in this court.[3] In light of these other cases, many of which preceded Plaintiffs' lawsuit, Defendants moved to sever and transfer them in this case to districts where challenges to the various plans were already pending. *See* Defs.' Mot. to Sever and Transfer (ECF No. 46). The Court denied the motion. *See* March 3, 2017 Memorandum Decision and Order (ECF No. 86). Four other cases challenging the 2015 Plan Amendments were subsequently filed in four different courts.[4]

In their suit challenging the 2015 Plan Amendments, Plaintiffs acknowledged that the plan amendments were "an important step forward for sage-grouse conservation," but claimed that the plan amendments were insufficient because they failed to follow the best available

---

[2] *See also* 80 Fed. Reg. 57,333 (Sept. 23, 2015) (notice of the Forest Service's Great Basin Region ROD); 80 Fed. Reg. 57,633 (Sept. 24, 2015) (notice of BLM's Great Basin Region ROD); 80 Fed. Reg. 57,639 (Sept. 24, 2015) (notice of BLM's Rocky Mountain Region ROD).

[3] *See W. Expl., LLC v. U.S. Dep't of the Interior*, No. 15-cv-491 (D. Nev. filed Sept. 23, 2015); *Otter v. Jewell*, No. 1:15-cv-1566 (D.D.C. filed Sept. 25, 2015); *Wyo. Stock Growers Ass'n v. U.S. Dep't of the Interior*, No. 2:15-cv-181 (D. Wyo. filed Oct. 14, 2015); *Wyo. Coal. of Local Governors v. U.S. Dep't of the Interior*, No. 2:16-cv-41 (D. Wyo. filed Mar. 1, 2016); *Herbert v. Jewell*, No. 2:16-cv-101 (D. Utah filed Feb. 4, 2016); *Am. Expl. & Mining Ass'n v. U.S. Dep't of the Interior*, No. 16-cv-737 (D.D.C. filed Apr. 19, 2016); and *W. Energy All. v. U.S. Dep't of the Interior*, No. 16-cv-112 (D.N.D. filed May 12, 2016).

[4] *Harney Soil & Water Conservation Dist. v. U.S. Dep't of the Interior*, No. 16-2400 (D.D.C. filed Dec. 7, 2016); *Cahill Ranches v. U.S. Dep't of the Interior*, No. 1:17-cv-960 (D. Or. filed June 19, 2017); *Bd. of Comm'rs of Garfield Cty. v. U.S. Dep't of the Interior*, No. 17-1199 (D. Colo. filed May 15, 2017); *Tugaw Ranches v. U.S. Dep't of the Interior*, No. 18-159 (D. Idaho filed Apr. 11, 2018).

science.  Compl. ¶ 3 (ECF No. 1).  They claimed that the plan amendments were issued without evaluating the impacts on Sage-Grouse across its range and that the environmental impact statements ("EISs") supporting the plan amendments did not sufficiently analyze the impacts of a variety of activities on Sage-Grouse.  *Id.* ¶¶ 4-10.  Yet Plaintiffs stated that the 2015 Plan Amendments represented "a substantial step forward in sage-grouse conservation," and therefore did "<u>not</u> seek to reverse or set aside the challenged EISs and RODs."  *Id.* ¶ 12.  Instead, they proposed that the Court order the Agencies to "cure" the alleged legal defects in the 2015 Plan Amendments by conducting further NEPA analysis and revising the plan amendments.  *Id.* ¶ 13.  In July 2017, Defendants moved to stay the case on the basis that the administration had changed and the 2015 Plan Amendments were under review.  *See* Unopposed Mot. to Stay Litigation (ECF No. 94).  The case has, in effect, remained stayed since that time.

      **B.**      **The Development and Issuance of the 2019 Plan Amendment**s

On June 7, 2017, the Secretary of the Interior issued an order designed to enhance cooperation between the States containing Greater Sage-Grouse habitat and the BLM in managing and conserving the Greater Sage-Grouse.  Secretary's Order No. 3353.[5]  Secretary's Order 3353, *inter alia*, directed DOI agencies to "review . . . the plans and programs that States already have in place to ensure that the 2015 Sage-Grouse Plans adequately complement state efforts to conserve the species," and to review the 2015 Plans to identify any "provisions that may require modification or rescission . . . in order to give appropriate weight to the value of energy and other development of public lands within BLM's overall multiple-use mission . . . ."  *Id.*  On August 4, 2017, the review team presented a report to the Secretary recommending

---

[5] Available at: www.doi.gov/sites/doi.gov/files/uploads/so_3353.pdf.

Defendants' Opposition to Plaintiffs' Motion for Leave to File First Supp. Complaint    3

modifying the 2015 Plan Amendments to better align with individual state plans, and to better balance the BLM's multiple-use mission.[6]

On October 11, 2017, BLM announced the beginning of a public planning process to consider amendments to the 2015 Plan Amendments focused on bringing the plans into closer alignment with the individual states' management plans and conservation strategies. *See* 82 Fed. Reg. 47,248 (Oct. 11, 2017).  On May 4, 2018, after a scoping process that included public comment, fifteen public open houses in ten western states, and meetings with the Western Governors' Association Sage-Grouse Take Force, BLM released a Draft EIS and Draft Plan Amendments for six states.  *See* Potential Amendments to Land Use Plans Regarding Greater Sage-Grouse Conservation, Scoping Report.[7]  Following a public comment period, BLM issued proposed plan amendments and final environmental impact statements for Oregon, Colorado, Idaho, Utah, Nevada/Northeastern California, and Wyoming.  *See* 83 Fed. Reg. 63,161 (Dec. 7, 2018).[8]

BLM completed its planning process on March 15, 2019, by issuing separate RODs and Resource Management Plan Amendments for Greater Sage-Grouse Conservation for all six states ("2019 Plan Amendments").  Each of the RODs was issued by a separate BLM state office and signed by the respective BLM state director.[9]  *See*, *e.g.*, Idaho Greater Sage-Grouse Record

---

[6] Available at: www.doi.gov/sites/doi.gov/files/uploads/so3353_memo_coverletter_report_080717.pdf.

[7] Available at: https://eplanning.blm.gov/epl-front-office/projects/lup/90121/136141/166396/Scoping_Report.pdf.

[8] The proposed plan amendment and final EIS for Wyoming can be found at https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=103347.

[9] The Nevada/Northeastern California ROD covered portions of Nevada and California and was signed by the BLM Nevada State Director and the BLM California Acting State Director.  *See* Nevada/California ROD at 1-13.  Links to all six RODs and supporting documents are available

Defendants' Opposition to Plaintiffs' Motion for Leave to File First Supp. Complaint    4

of Decision and Approved Resource Management Plan Amendment ("Idaho ROD") at 1-16 (signature of BLM Idaho Acting State Director Peter J. Ditton).  Notably, while Plaintiffs name Secretary of the Interior, David Bernhardt, in their proposed supplemental complaint, they do not name the six BLM officials who approved the new plan amendments.

The 2019 Plan Amendments modify BLM's underlying land use plans, including some of the allocations, objectives, and management decisions made through the 2015 Plan Amendments.  *See*, *e.g.*, *id.*, at 2-2 - 2-7.  While each ROD is designed to meet the goals of conserving the Sage-Grouse and its habitat, they each reflect the different approaches the states are taking within their jurisdictions to conserve Sage-Grouse.  *See id.* at 1-3 – 1-4.  The BLM state field offices worked extensively with the respective states in developing the plan amendments.  *See*, *e.g.*, Idaho Greater Sage-Grouse Proposed Resource Management Plan Amendment and Final Environmental Impact Statement at 5-1.[10]

    C.    **Plaintiffs' Proposed New Claims**

On March 27, 2019, Plaintiffs filed their motion to supplement requesting that the 2016 lawsuit challenging the 2015 Plan Amendments be supplemented with new claims challenging the 2019 Plan Amendments.  *See* Pls.' Opening Brief in Supp. of Mot. to File First Suppl. Compl. at 1-3 (ECF No. 118-1) ("Pls. Brief").  The proposed supplemental complaint adds four new claims challenging all six RODs approving plan amendments in six different states and the EISs supporting them.  Proposed First Suppl. Compl. ¶¶ 6, 82-83.  The proposed supplemental complaint claims that the 2019 Plan Amendments "unlawfully weakened federal land

---

at: https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=134121.

[10] Available at: https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=153102.

management measures designed to protect the greater sage-grouse." *Id.* ¶ 2. In addition to challenging the 2019 Plan Amendments, Plaintiffs also propose to add claims challenging BLM's 2017 cancellation of a proposal to withdraw certain areas from location and entry under the Mining Law of 1872. *Id.* ¶¶ 56, 179-187. Plaintiffs also seek to add a claim seeking declaratory relief that the Department of the Interior and BLM have the legal authority to require compensatory mitigation under the Federal Land Policy and Management Act ("FLPMA") and other statutes. *Id.* ¶¶ 188-193. Unlike in its original Complaint, Plaintiffs seek to have the 2019 Plan Amendments, as well as the cancellation of the proposed withdrawal, vacated. *Id.* at 49-50 (Supplemental Prayer for Relief). They also seek an injunction "maintaining the 2015 Sage-Grouse Plans in effect, until Plaintiffs' supplemental claims herein are adjudicated on the merits." *Id.*

## LEGAL STANDARD

A party may move for leave to file a supplement complaint "setting out any transaction occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A district court has broad discretion in determining whether to grant a motion to supplement. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 2001). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Id.* at 473-74 (quoting *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1982)). Courts "liberally construe Rule 15(d) absent a showing of prejudice to the defendant." *Id.* at 475. But while district courts have broad discretion with respect to supplemental pleadings, they should allow such supplements only "when to do so will promote speedy disposition of the entire controversy, will not cause undue delay, and will not prejudice other

parties' rights." *Id.* (citation omitted).  Moreover, "[w]hile leave to permit supplemental pleading is 'favored,' *Keith*, 858 F.2d at 473, it cannot be used to introduce a 'separate, distinct and new cause of action.'"  *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (per curiam).

## ARGUMENT

### I. Plaintiffs' Proposed Supplemental Complaint Should Not Be Permitted Because It Would Raise Distinct, New Causes of Action

The Court should deny Plaintiffs' request to supplement the complaint because Plaintiffs seek to add six new distinct causes of action, which is not permitted under Ninth Circuit law. *Planned Parenthood*, 130 F.3d at 402.  The *Planned Parenthood* case involved a challenge to an abortion statute which the court found to be unconstitutional.  *Id.* at 401-02.  Subsequently, the Arizona legislature amended the statute, and the plaintiffs attempted to supplement their complaint to challenge the new law.  *Id.* at 402.  The court denied the motion to supplement, explaining that the proposed supplemental complaint "involved a new and distinct action that should have been the subject of a separate suit."  *Id.*  The court further explained that although "both the original suit and the supplemental complaint sought to challenge Arizona's parental consent law, the supplemental complaint challenged a different statute than the one that had been successfully challenged in the original suit."  *Id.*[11]

On at least three occasions, this Court has denied Plaintiff Western Watersheds Project's requests for leave to supplement a complaint with new legal claims well after the onset of litigation, relying on the principles established in *Planned Parenthood*.  In one instance, Western Watersheds Project moved to supplement a complaint against the U.S. Forest Service to add

---

[11] The Ninth Circuit also noted that the original suit had already proceeded to a final judgement four years previously and that the judgments was not appealed.  130 F.3d at 402.  But these facts provided only secondary support to the court's holding that new and distinct claims should be brought in a separate lawsuit.  *See id.*

claims alleging new statutory violations. *See W. Watersheds Project v. U.S. Forest Serv.*, No. CV-05-189-E-BLW, 2009 WL 3151121, at *2 (D. Idaho Sept. 26, 2009). This Court denied the motion, finding that the "claims [were] more appropriately raised in a new cause of action." *Id.* at *4.

Subsequently, this Court denied Western Watershed Project's motion to supplement a complaint to add claims challenging the Forest Service's application of a sheep grazing rider, which Congress passed five years after the suit was brought and after the Court had ruled on the original claims in the case. *W. Watersheds Project v. U.S. Forest Serv.*, No. 4:07-CV-151-BLW, 2012 WL 2019961, at *1-2 (D. Idaho June 4, 2012). The Court explained that if the proposed supplement were granted, "the resulting litigation [would] turn entirely on the legal interpretation of a piece of legislation passed in 2012," which was two years after the Court's merits ruling in the case. *Id.* at *2. Further, to allow the reopening of the case and supplementation would have "creat[ed] an entirely new case within the shell of an action over 5 years old." *Id.* Thus, the Court denied supplementation, finding that the proposed supplemental complaint was "a new action and should be treated as such." *Id.*

Finally, in *Western Watersheds Project v. Zinke*, 347 F. Supp. 3d 554 (D. Idaho 2018), Western Watersheds Project sought to supplement a complaint to add claims under a recently issued statute. *See id.* at 558. The Court found that the new complaint sought to add "new substantive claims" and therefore should be brought in a new lawsuit. *Id.*

The principles established in *Planned Parenthood* and followed in this Court's prior rulings in other cases apply equally here. The claims that Plaintiffs now seek to bring are fundamentally different from the ones they brought in 2016. They challenge new agency decisions based on new analysis. Unlike the 2015 Plan Amendments which were developed and

issued at the national level and have two RODs for fifteen sub-regions, the 2019 decisions were developed and issued by six different BLM state offices and resulted in six separate RODs for six states.  *See* Proposed First Suppl. Compl. ¶ 83.  Plaintiffs suggest that reviewing both sets of Plan Amendments at the same time would be simple.  But the new 2019 Plan Amendments do not directly match up with 2015 Plan Amendments as the boundaries of each decision area have changed.  *See* Idaho ROD at 1-5 (defining the 2019 planning area as limited to public lands in Idaho, whereas one of the 2015 Plan Amendments encompassed Idaho and Southwestern Montana).  Moreover, each of the 2019 Plan Amendments will have its own administrative record.  The documents in those later records cannot be used to evaluate the adequacy of the 2015 Plan Amendments, but keeping the records, and the Court's evaluation of the two sets of amendments, separate will prove difficult if the 2015 and 2019 amendments are litigated together.

The fact that Plaintiffs have had to develop four entirely new FLPMA and NEPA claims under which to challenge the 2019 Plan Amendments demonstrates that the new amendments are fundamentally different from the 2015 Plan Amendments.  *See id.* ¶¶ 143-178.  If the plans were substantially related, Plaintiffs could have supplemented their existing claims with additional facts regarding the 2019 amendments.  That they chose to add completely new claims for the new amendments shows that the two sets of amendments are subject to distinct challenges and should be litigated separately.  Further, Plaintiffs also seek to add an entirely new NEPA challenge to a separate decision to cancel a proposal to withdraw lands from location and entry under the 1872 Mining Law.  *Id.* ¶¶ 48-60, 179-187.

Moreover, Plaintiffs' attempt to link their new claims to the claims in the original complaint glosses over the inherent inconsistency between their two complaints.  In their suit

challenging the 2015 Plan Amendments, Plaintiffs stated that the 2015 Plan Amendments represented "a substantial step forward in sage-grouse conservation," and therefore they did "<u>not</u> seek to reverse or set aside the challenged EISs and RODs." Compl. ¶ 12. The relief sought in the proposed new complaint is much different—Plaintiffs seek to have the 2019 Plan Amendments, as well as the cancellation of the proposed withdrawal, vacated and also seeks an injunction "maintaining the 2015 Sage-Grouse Plans in effect, until Plaintiffs' supplemental claims herein are adjudicated on the merits." Proposed First Suppl. Compl. at 49-50 (Supplemental Prayer for Relief). The difference in the relief sought demonstrates that their proposed supplemental complaint does not merely add new facts relating to their old claims, but instead adds new claims asking for entirely different relief.

In sum, because Plaintiffs seek to raise several new legal claims challenging multiple new actions, its motion for leave to supplement should be denied.

## II. Plaintiffs' Proposed Supplemental Complaint Would Not Promote Judicial Economy

Allowing Plaintiffs to file their proposed supplemental complaint would not promote judicial economy and instead would expand this case by adding new actions and new legal theories. The new claims would need to be resolved on new administrative records for the various challenged actions, and that alone is a valid basis for denying the motion to supplement. *See Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 395 (E.D. Wis. 2008) (declining to consolidate cases brought pursuant to the APA and explaining that "a district court must review each project based on its own administrative record" and "the projects are different enough to require independent review."). Just as important, the case would be significantly expanded to add six new decisions approving the 2019 Plan Amendments, the withdrawal cancellation

decision, and BLM's mitigation policy. Adding all of these new claims will not expedite the resolution of the existing claims.

Moreover, the 2019 Plan Amendments replace and modify portions of the 2015 Plan Amendments rendering some aspects of the 2015 Plan Amendments obsolete. *See*, *e.g.*, Idaho ROD at 2-2 – 2-7 (replacing certain management objectives and directives regarding special status species from the 2015 Plan Amendments). It would be inefficient for this Court to review claims addressing aspects of the 2015 Plan Amendments that no longer have any effect because they have been altered by the 2019 Plan Amendments. The more efficient course would be for Plaintiffs to file a new lawsuit challenging the new agency decisions, litigate the validity of those decisions, and then determine, in light of the Court's judgment on the 2019 Plan Amendments, what aspects of the 2015 Plan Amendments are in effect and whether Plaintiffs' challenging those portions of the plan amendments still need to be resolved.

Plaintiffs argue that this Court "has developed extensive familiarity with the applicable law, science, and background of the federal sage-grouse plans through this and prior litigation." Pls. Brief at 12. But the mere fact that this Court has become familiar with the factual and legal issues surrounding the 2015 Plan Amendments is an insufficient basis on which to grant supplementation because Plaintiffs can always bring a new lawsuit. *See W. Watersheds Project*, 2009 WL 3151121, at *3. It is also worth noting that, while the record was filed in this case, no actual briefing has taken place, and therefore the Court has had no occasion to become familiar with the factual record supporting the 2015 Plan Amendments, and there has been no opportunity for the Court to review the parties' legal arguments regarding the 2015 Plan Amendments.

Plaintiffs argue that because they agreed to stay the prior claims pending the outcome of the new Sage-Grouse planning process, they should be permitted to file a supplemental

Defendants' Opposition to Plaintiffs' Motion for Leave to File First Supp. Complaint     11

complaint.  *See* Pls. Brief at 13.  While it is true that the parties agreed to stay the litigation while the new planning process was undertaken, it was never Defendants' understanding that at the end of the process, the complaint would be supplemented.  The new process could have resolved the prior claims or, as occurred here, given rise to new claims based on new agency actions.  Defendants, however, never agreed that the complaint would be supplemented.

Finally, Plaintiffs have indicated a desire to file a motion for a preliminary injunction.  *See id.*  If that is Plaintiffs' goal, the most efficient way to reach that objective would be to file a new lawsuit setting forth exactly what it is challenging and the relief sought and filing a motion for a preliminary injunction.

## CONCLUSION

In sum, Plaintiffs are attempting to tack new claims against new agency actions on to existing claims against different agency actions to avoid the burden of filing a new lawsuit.  As this Court has found in numerous prior cases, that tactic is improper.  Because Plaintiffs have failed to demonstrate that supplementation of the complaint is appropriate, their motion should be denied.

Respectfully submitted this 17th day of April, 2019,

>BART M. DAVIS, Idaho Bar No. 2696
>United States Attorney
>
>CHRISTINE G. ENGLAND, California Bar No. 261501
>Assistant United States Attorney
>District of Idaho
>Washington Group Plaza IV
>800 East Park Boulevard, Suite 600
>Boise, Id 83712-7788
>Tel: (208) 334-1211; Fax: (208) 334-1414
>Email: Christine.England@usdoj.gov
>
>JEAN E. WILLIAMS

        Deputy Assistant Attorney General

        LUTHER L. HAJEK
        BARCLAY T. SAMFORD
        U.S. Department of Justice
        Environment and Natural Resources Division
        Natural Resources Section
        999 18th Street, South Terrace, Suite 370
        Denver, CO 80202
        Tel: (303) 844-1376; Fax: (303) 844-1350
        E-mail: luke.hajek@usdoj.gov
                clay.samford@usdoj.gov

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2019, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Counsel for Plaintiff Western Watersheds Project

Laurence J. Lucas
llucas@advocateswest.org

Todd C. Tucci
ttucci@advocateswest.org

Counsel for Intervenor-Defendant Western Energy Alliance

Bret A. Sumner
bsumner@bwenergylaw.com

Malinda Morain
mmorain@bwenergylaw.com

Paul A. Turcke
pat@msbtlaw.com

Cherese De'Dominiq McLean
cdm@msbtlaw.com

Intervenor-Defendants Wyoming Stock Growers Ass'n and Petroleum Ass'n of Wyoming

David C. McDonald
dmcdonald@mslegal.org

John L. Runft
JRunft@runftsteele.com

Intervenor-Defendants Idaho Power Co. and Pacificorp

Andrew J. Pieper
andrew.pieper@stoel.com

Beth S. Ginsberg
bginsberg@stoel.com

Kevin J. Beaton
kjbeaton@stoel.com

Jason T. Morgan
jtmorgan@stoel.com

Intervenor-Defendant State of Wyoming

Erik Edward Petersen
erik.petersen@wyo.gov

James Kaste
James.kasted@wyo.gov

Paul A. Turcke
pat@msbtlaw.com

Intervenor-Defendants National Cattlemen's Beef Ass'n and Public Lands Council

Caroline Lobdell
clobdell@wrlegal.org

Candice M. McHugh
cmmchugh@mchughbromley.com

Christopher M. Bromley
cbromley@mchughbromley.com

Amicus State of Utah, Governor Gary R. Herbert, and School and Inst. Trust Lands Admin.

Laurence M. Bogert
mbogert@parsonsbehle.com

William Gerry Myers III
wmyers@hollandhart.com

                                                    */s/ Luther L. Hajek*
                                                    Luther L. Hajek