Laurence J. ("Laird") Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, et al., | Case No. 1:16-cv-00083-BLW |
| *Plaintiffs*, | **DECLARATION OF MICHAEL SAUL** |
| v. | |
| DAVID BERNHARDT, Acting Secretary of Interior; JOSEPH R. BALASH,* Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE, | |
| *Defendants*. | |

*\* Official Defendant automatically substituted
per Fed. R. Civ. P. 25(d)*

I, Michael Saul, declare as follows:

1.      The following facts are personally known to me, and if called as a witness

I would and could truthfully testify to these facts.

DECLARATION OF MICHAEL SAUL - 1

2.      I have been both a member and employee of the Center for Biological Diversity ("Center") since 2014. I am currently employed as Senior Attorney for the Center's Public Lands Program. In this role, I engage in administrative and legal advocacy to protect wildlife and wildlife habitat on public lands and work towards mitigating adverse impacts of public lands fossil fuel development.

3.      My office is located in Denver, Colorado, and I can be contacted at msaul@biologicaldiversity.org.

4.      I hold a Bachelor of Arts degree from Yale College and a Juris Doctor degree from Yale Law School. I have eighteen years of experience in public lands and wildlife law. I have been involved in efforts to protect greater sage-grouse habitat on BLM lands since 2002.

**Personal and Professional Interests in Greater Sage-Grouse Conservation**

5.      As a Senior Attorney with the Center for Biological Diversity, my responsibilities are focused on policy, advocacy, and litigation over public lands fossil fuel development, with a particular emphasis on attempting to mitigate adverse impacts to climate and wildlife habitat from oil and gas, coal, tar sands, and oil shale extraction, development, and combustion. I have worked on legal issues relating to sage-grouse conservation since 2002, and for the Center since 2014. In that capacity, I have developed familiarity with legal, policy, planning, and scientific issues and data relating to sage-grouse conservation.

6.      The Center has submitted technical comments and protests on all stages of the BLM and Forest Service's sage-grouse planning activities, including the draft and final 2015 Resource Management Plan Amendments, pending Forest Service plan

DECLARATION OF MICHAEL SAUL - 2

amendments, and the 2019 BLM Sage-Grouse Resource Management Plan Amendments. Center staff also work to track, comment on, and protest where warranted BLM activities, including but not limited to oil and gas leasing and permitting, that will foreseeably have adverse effects on greater sage-grouse and their habitat.

7.      I also personally enjoy traveling to view sage-grouse, particularly during their spring mating displays, also known as "lekking," and have made trips to view greater sage-grouse lekking displays on BLM public lands in Colorado, Wyoming, and Nevada, most recently in the Monitor Valley of central Nevada in May 2018. On the trip to Monitor Valley, I had the opportunity to view and photograph over ten greater sage-grouse exhibiting dancing behavior on a lek north of Mosquito Creek. I plan to return to view greater sage-grouse again next spring in North Park, Colorado, and, if possible, in Nevada. I also have a trip planned to view the threatened Gunnison sage-grouse on a lek outside Gunnison, Colorado on April 27-28, 2019.

**Center for Biological Diversity's Interests in Sage-Grouse Conservation**

8.      The Center's primary mission is to protect threatened and endangered species and their habitats in both the United States and abroad. Although we pursue these objectives nationwide, much of our work focuses on advocating for habitat protection on western public lands. The Center specifically works to protect public lands administered by the Bureau of Land Management (BLM) in multiple states from the adverse impacts of fluid mineral leasing and development, particularly impacts to greater sage-grouse, sagebrush habitat, and other sagebrush obligates.

9.      The Center's members include many individuals who reside in, explore, and enjoy the native species and ecosystems of the Interior Mountain West, where the

DECLARATION OF MICHAEL SAUL - 3

greater sage-grouse is found. The Center's staff has and continues to actively advocate for increased protections for species and habitats in the lands managed by the BLM at multiple levels including, but not limited to: comments on proposed land use and forest plans, comments on proposed leasing and development decisions and associated National Environmental Policy Act documents, administrative protests, appeals to the Interior Board of Land Appeals, litigation, public education, publication of research papers, social media advocacy, and lobbying.

10.    Center members, officers, and staff regularly observe, photograph, document, and study greater sage-grouse on public lands for recreational, scientific, educational, and other pursuits and intend to continue to do so in the future. The Center advocates on behalf of members interested in protecting the many native, imperiled, and sensitive sagebrush-dependent species and their habitats that may be affected by oil and gas development.

11.    Based on communications with Center members, officers, and staff, I have direct knowledge that Center members, officers, and staff have observed and photographed greater sage-grouse on public land (BLM and Forest Service) in states including Idaho, Colorado, Nevada, Utah, Wyoming, and California.

12.    The Center has been involved for over a decade in efforts to protect at-risk grouse species, including the greater sage-grouse, Bi-state distinct population segment sage-grouse, Gunnison sage-grouse, and lesser prairie chicken. In addition to the Center's oil and gas monitoring activities, these advocacy efforts have included Endangered Species Act listing petitions and litigation over the listing and protection of the Bi-state distinct population segment of greater sage-grouse, Gunnison sage-grouse, and lesser

DECLARATION OF MICHAEL SAUL - 4

prairie chicken, as well as ongoing litigation over BLM oil and gas leasing and permitting activities within greater sage-grouse habitat on public lands.

13.    The Center's legal advocacy for greater sage-grouse conservation includes a 2011 settlement agreement with the Fish and Wildlife Service setting a timeline for a listing decision; litigation overturning the Fish and Wildlife Service's decision that listing of the Bi-State Distinct Population Segment was not warranted, *Desert Survivors v. U.S. Dep't of the Interior*, No. 3:16-cv-1165 (N.D. Cal.) (summary judgment granted for plaintiffs May 15, 2018); this litigation regarding the 2015 BLM and Forest Service Approved Resource Management Plan Amendments ("2015 Plans") and the subsequent 2019 BLM Plan Amendments; and ongoing litigation challenging the BLM's oil and gas leasing and development activities within greater sage-grouse habitat, *Western Watersheds Project v. Zinke*, No. 1:18-cv-187 (D. Idaho).

**Adverse Impacts of BLM's Sage Grouse Conservation Rollbacks**

14.    On behalf of the Center and other environmental organizations, I helped write public comments and protests on both the original 2015 Plans and the 2019 BLM Amendments to those plans.  As a result, I am closely familiar with the 2019 Plan Amendments and ways in which they fail to adequately protect sage-grouse, in particular in the area of oil and gas development within sage-grouse habitat.

15.    Based on my review of the BLM's 2019 Resource Management Plan Amendments, their accompanying Draft and Final Environmental Impact Statements, the BLM's regulations, manuals, handbooks, and instruction memoranda for oil and gas leasing and development activities, and searches of BLM databases including its ePlanning NEPA database, I have identified multiple areas where the 2019 Plan

DECLARATION OF MICHAEL SAUL - 5

Amendments will have immediate and concrete impacts on how and where sage-grouse habitat-disturbing activities will be approved and implemented on BLM-managed lands and minerals.

16.     For all BLM-managed lands, compensatory mitigation for unavoidable impacts of habitat-disturbing projects will no longer be required, and prior requirements that mitigation achieve a "net conservation gain" has been eliminated in some, but not all, states.

17.     In northwest Colorado, where oil and gas development is one of the principal threats to sage-grouse persistence and recovery, significant 2019 plan changes include the following:

(a)     Lands within 1 mile of active sage-grouse leks have been changed from "closed to leasing" to "open to leasing subject to [No Surface Occupancy]." CO ROD at 2-15 to 2-16 (showing change to MD MR-1). Those No Surface Occupancy stipulations are now open to potential exceptions or modifications (with no public notice) or waiver (with 30 days public notice). *Id.* This allows potential impacts to approximately 224,000 acres of previously-protected habitat within one mile of active lek sites.

(b)     The application of protective buffers around lek sites has been changed from mandatory to discretionary. *Id.* at 2-3 (comparing 2015 MD SSS-2 ("BLM will apply the lek buffer distances") with 2019 MD SSS-2 ("BLM will evaluate the lek buffer distances during project-specific NEPA analyses")). Because "project-specific NEPA analyses" are frequently conducted under Categorical Exclusions or Determinations of NEPA Adequacy, with little or no public involvement, this greatly

DECLARATION OF MICHAEL SAUL - 6

reduces both the certainty that protective buffers will be implemented and the ability of the Center and the public to learn of or comment on implementation decisions.

(c)     U.S. Fish and Wildlife Service and public involvement in decisions to approve waivers, exceptions, or modifications to protective stipulations has been eliminated or reduced. *Id.* at G-4 to G-9.

18.     In Idaho significant changes include the following:

(a)     Approximately 3.7 million acres of "Sagebrush Focal Areas" have been opened to new mining claims for locatable (solid) minerals and to potential waiver, exception, or modification of No Surface Occupancy stipulations restricting fluid mineral (oil and gas) development. ID ROD at 2-10.

(b)     Previously-applicable caps on the amount of sage-grouse habitat that may be disturbed have been changed to apply not at the level of individual projects, but instead at a population-wide scale. ID ROD at 2-5 (MD SSS 27). This will allow individual projects to result in levels of disturbance far in excess of recommended levels for sage-grouse survival.

19.     In Nevada and California, where some of the chief threats to sage-grouse include invasive vegetation, fire, and surface mining, significant 2019 plan changes include the following:

(a)     BLM has eliminated "Sagebrush Focal Area" protections for approximately 2,767,000 acres of the highest-value sagebrush habitats in Nevada. Previously, under the 2015 plans, these lands were segregated and proposed for withdrawal from new mining claims for locatable (solid) minerals, and subject to non-waivable No Surface Occupancy stipulations for fluid minerals (oil and gas). Under the

DECLARATION OF MICHAEL SAUL - 7

BLM's 2017 cancellation of the proposed SFA mineral withdrawal and the 2019 Plan Amendments, those areas are now open to new mining claims and subject to potential waiver, exception, or modification of oil and gas stipulations. NV/CA ROD at 2-32 (MD MR 3) and 2-12 to 2-13 (MD SSS 5).

(b)    The application of protective buffers around lek sites has been changed from mandatory, (BLM will apply the lek buffer distances"), to discretionary, (BLM will evaluate the lek buffer distances during project-specific NEPA analyses). *Id.* at 2-9. Because "project-specific NEPA analyses" are frequently conducted under Categorical Exclusions or Determinations of NEPA Adequacy, with little or no public involvement, this greatly reduces both the certainty that protective buffers will be implemented and the ability of the Center and the public to learn of or comment on implementation decisions.

(c)    BLM's 2015 requirement to "prioritize the leasing and development" of oil and gas outside sage-grouse habitats has been eliminated entirely, NV/CA ROD at 2-32, increasing the probability that both new leasing and ground-disturbing development may occur within sage-grouse habitats.

20.    In Utah, safeguards for sage-grouse habitat have been eliminated completely for approximately 1.85 million acres of General Habitat Management Areas, UT ROD at 36, particularly in areas of active oil and gas activity in northeast Utah, and vastly reduced in remaining Priority Habitat Management Areas on Utah BLM lands, including the following:

(a)    Approximately 181,000 acres of Sagebrush Focal Areas, previously subject to No Surface Occupancy stipulations with no waiver, exception, or

DECLARATION OF MICHAEL SAUL - 8

modification, are now potentially subject to surface disturbance under allowable waivers, exceptions, or modifications. UT ROD at 38, 79.

(b)    Previously-applicable 3% disturbance caps are now subject to newly-introduced and highly discretionary exceptions. UT ROD at 43-44, 46.

(c)    BLM's 2015 requirement to "prioritize the leasing and development" of oil and gas outside sage-grouse habitats has been eliminated entirely, UT ROD at 78, increasing the probability that both new leasing and ground-disturbing development may occur within sage-grouse habitats.

(d)    Criteria for waivers, exceptions, or modifications to protective stipulations have been expanded and requirements for consultation with the U.S. Fish and Wildlife Service eliminated, UT ROD at 79-81, substantially increasing the likelihood that habitat-disturbing activities will be permitted within remaining Priority Habitat Management Areas.

21.    In Wyoming, the 2015 requirement to prioritize leasing and development outside all sage-grouse habitats has been significantly qualified. BLM's 2019 plans now eliminate this requirement from General Habitat Management Areas and limit the agency's prioritization objective to "When analyzing leasing and authorizing development of fluid mineral resources, including geothermal, in PHMAs, and subject to applicable stipulations for the conservation of Greater Sage-Grouse, priority would be given to development in non-habitat areas first and then in the least suitable habitat for Greater Sage-Grouse." WY ROD at 19. The 2019 Wyoming Plan Amendments also increase BLM discretion to grant exceptions to previously-mandatory buffers around lek sites. WY ROD at A-8 and A-9 (MD SSS 5 and 6)

DECLARATION OF MICHAEL SAUL - 9

**The 2019 Sage Grouse Plan Amendments Are Being Implemented Immediately in BLM Proposed Lease Issuances and Permit Approvals**

22.     These problems under the new sage-grouse have already been applied and will continue be seen immediately across the planning area, where BLM is scheduled to approve multiple new site-specific leases and projects under the 2019 Plans in the coming weeks and months. Both before and since the publication of the RODs on March 15, 2019, I have also been monitoring specific actions implicating BLM's implementation of the plans through regular queries to BLM's "ePlanning" NEPA database and automated drilling permit database (AFMSS), review of lease sale notices and NEPA documents, review of third-party habitat and conservation data, and communication with Center staff and partners.

23.     In Colorado, on April 2, 2019, BLM issued a preliminary list of lands to be offered for oil and gas leasing at a September 2019 lease auction, project DOI-BLM-CO-0000-2019-0005-OTHER_NEPA. 75 out of 83 parcels being offered were previously proposed for leasing in December 2018. Those parcels, according to BLM, were "deferred for Sage Grouse," following objections by both the Governor of Colorado and the public. BLM's preliminary notice states that "Not all parcels listed reflect the Greater Sage-Grouse stipulations that will be applied based on the Northwest Colorado Greater Sage-Grouse Record of Decision and Approved Resource Management Plan Amendment, approved March 2019. The updated stipulations will be available at the comment period on May 14, 2019."  If the 2019 Plan Amendments are not enjoined, it is substantially likely that BLM will offer and lease these proposed parcels with the modified lease stipulations of the 2019 plans, which include substantially increased discretion for BLM to allow surface-disturbing activity within high-value habitats.

DECLARATION OF MICHAEL SAUL - 10

24. On March 19, 2018, the Utah BLM moved twenty-six proposed leases in northeast Utah sage-grouse habitat from the March 2019 Utah Competitive Lease Sale to the proposed 2019 September sale in order to re-offer the parcels under the less-protective stipulations of the 2019 Utah Management Plan Amendments. BLM, March 2019 Utah Lease Sale, Errata Sheet No. 2, https://eplanning.blm.gov/epl-front-office/projects/nepa/117403/169121/205719/March2019_Errata_2_updated_3-19-19.pdf.

25. On March 19, 2018, Utah BLM further removed or replaced protective stipulations from at least 107 parcels offered and/or sold in the March 25-26, 2019 Competitive Lease Sale, noting that these stipulations were no longer required under the 2019 Plan Amendments. The eliminated stipulations governed net conservation gain, no surface occupancy limitations, disturbance caps, and buffer distances. *Id.*

26. In Wyoming, multiple pending large-scale oil and gas development projects are currently at various stages of BLM's planning process. Changes to the Wyoming RMPs, particularly including the modification of the oil and gas prioritization requirement, the elimination of compensatory mitigation requirements, the expansion of criteria for exceptions to buffer distances, and the elimination of noise limits for certain habitats, will, unless enjoined, foreseeably result in increased impacts to sage-grouse and habitat within those projects areas. Pending projects that will foreseeably be affected by the plan changes include:

(a) The Normally Pressured Lance project, up to 3500 new oil and gas wells within sage-grouse habitat in western Wyoming, BLM/WY/PL-18/011+1310. Recent news reports indicate that exploratory drilling has already begun, and that production will begin in the second half of 2019. *See*

DECLARATION OF MICHAEL SAUL - 11

https://www.wyomingpublicmedia.org/post/npl-oil-and-gas-project-prepares-drilling-later-year#stream/0. Although approved prior to the 2019 amendments, the Normally Pressured Lance Record of Decision expressly provides that "protection measures from the BLM Wyoming Sage-Grouse RMP Amendments (BLM 2015a) will be applied, unless more current guidance is adopted by the BLM." Normally Pressured Lance Record of Decision at 8. As a result, drilling permits and rights-of-way may be approved under the relaxed standards of the 2019 Plan Amendments. Significant changes include the elimination of noise restrictions near leks in General Habitat Management Areas and the possibility of exceptions to the lek buffers in all habitat. It is also foreseeable that BLM will no longer require that mitigation measures for the project result in a "net conservation gain" for sage-grouse, Normally Pressured Lance FEIS at 2-10, but instead only comply with the State of Wyoming's mitigation framework, WY ROD at 17-18.

(b)    The currently-pending Converse County oil and gas project will authorize up to 5000 new wells, largely within sage-grouse habitat, No. DOI-BLM-WY-P060-2014-0135-EIS. A draft Environmental Impact statement for this project was released for public comment January 26, 2018. Although the project has not yet been approved, based on media reports, pipeline construction activities have already begun in anticipation. Should the project be approved under the requirements of the 2019 Wyoming Plan Amendments, implementation would be governed the weakened standards for mitigation, buffer exceptions, and noise reduction under those amended plans.

(c)    The Moneta Divide natural gas & oil development project is also pending BLM approval. According to pre-publication notice in the Federal Register, a

DECLARATION OF MICHAEL SAUL - 12

draft EIS will be issued for the project on April 19, 2019.

https://s3.amazonaws.com/public-inspection.federalregister.gov/2019-07701.pdf. The

project is anticipated to authorize 4,250 wells and a pipeline on 170,000 acres of federal

surface in BLM's Lander, Rawlins, and Casper Field Offices in Wyoming (265,000 acres

total) in part within greater sage-grouse "core" areas and in proximity to nine active

greater sage-grouse leks.

27.    2019 changes to the BLM Sage-Grouse Plans will also foreseeably affect

the implementation of coal leasing and mine planning decisions on BLM lands, including

the recently-approved Alton surface coal mining lease in southern Utah, No. DOI-BLM-

UT-C040-2015-0011-EIS. The August 2018 Alton coal lease Record of Decision, at 2-3,

and FEIS, 4-289, expressly provides that the project will reduce impacts to multiple sage-

grouse leks on the site due to the fact that BLM was required to comply with

conservation measures in the 2015 Utah Sage-Grouse Resource Management Plan

amendments, stating: "The ARMPA identifies PHMAs and GHMAs and applies specific

protections to PHMAs and GHMAs to protect sage-grouse on BLM-administered lands

(BLM 2015a). These protections include a net conservation gain requirement, a

disturbance cap, a development density restriction, predation requirements, noise

restrictions, tall structure restrictions, seasonal restrictions, a lek buffer, and various

required design features." Under the 2019 Utah amendments, multiple protections

(including net conservation gain, disturbance cap, development density, and lek buffers)

have been reduced, or eliminated entirely in the case of Utah General Habitat

Management Areas. Unless those changes are enjoined, greater-sage grouse populations

DECLARATION OF MICHAEL SAUL - 13

on and around the Alton tract will be at greater risk due to surface mining activities on the 2018 Alton coal lease due to the elimination of those protections.

28.     The 2019 Plan Amendments will also have site-specific impacts on pending or recently-approved but not-yet-implemented gold and other surface mining projects in Nevada sage-grouse habitat on BLM lands. According to BLM's 2018 Nevada/California RMP FEIS, the agency is currently reviewing 20 plans of development for new mines or expansions within sage-grouse habitat, including the recently-approved Gold Rock Mine project in White Pine County, Nevada, No. DOI-BLM-NV-L010-2013-0028-EIS. In Nevada, implementation of those mining plans will be subject to reduced and less certain buffer distances, relaxed disturbance caps, and new "allocation exceptions" to plan requirements, allowing the BLM to grant discretionary exceptions to all protective measures.

29.     According to BLM's 2018 Final EISs for the 2019 Plan Amendments, over a thousand right-of-way applications (for roads, pipelines, power lines, etc.) within sage-grouse habitat are pending that will be processed and implemented under the 2019 plan amendments (123 in Idaho, 85 in Nevada and California, 380 in Utah, and 590 in Wyoming). BLM right-of-way applications are generally processed in less than 60 days and frequently under Categorical Exclusions that allow for little or no public disclosure or comment. For example, on January 29, 2019, BLM's Vernal, Utah field office approved a pipeline right-of-way within a greater sage-grouse General Habitat Management Area in reliance on a Categorical Exclusion, Red Wash Temporary Pipeline, No. DOI-BLM-UT-G010-2019-13-CX.

DECLARATION OF MICHAEL SAUL - 14

30.    Given the approximately 380 pending right-of-way applications in Utah as of November 2018, it is foreseeable that BLM will approve multiple rights-of-way within now-unprotected Utah General Habitat Management Areas within the coming weeks and months. A modification to the No Surface Occupancy stipulation in Utah will also allow operators to place roads, pipelines, and powerlines related to oil and gas development in sage-grouse Priority Habitat Management Areas. UT ROD at 90.

31.    In other states, right-of-way approvals will be subject to reduced and less certain buffer distances. In Idaho, new roads, pipelines, and powerlines constructed in General Habitat Management Areas will no longer be subject to mandatory Required Design Features—including burial of power lines, colocation of linear facilities, speed limits, dust abatement, vehicle traffic restrictions, and project reclamation. ID FEIS at ES-4; ROD at App. C. Under the amended plans, these must be applied in General Habitat Management Areas only when deemed "practicable."

32.    I personally, other Center members and staff, and the general public that uses and enjoys our public lands and values greater sage-grouse as an integral part of those lands, will be imminently and irreparably harmed if the 2019 BLM Plan Amendments are implemented in these ways, and in the many others that BLM will unquestionably be approving in coming months and weeks.  The 2019 Plans open up sage-grouse habitats for new energy leasing and development and other impacts, and remove or relax conditions and restrictions that otherwise would apply to new oil and gas, coal, or other development.

33.    Once oil/gas and coal leases are granted, the lessees have "valid existing rights" defined by BLM regulations (see, e.g., 43 CFR 3101) and, importantly, the stipulations attached to those leases. It is the RMP-level planning decision that determines which stipulations will be imposed at lease offering and implemented at the

DECLARATION OF MICHAEL SAUL - 15

stage of drilling permit or mine plan approvals—as illustrated by the Utah example above, where BLM has already offered at least 107 oil and gas leases with formerly-applicable protective stipulations removed or relaxed due to the plan amendments.

34.     Because the stipulations are set (or removed) at the planning level, the only effective relief from legal violations in plans which set the terms of hundreds of oil and gas leases, and potentially thousands of drilling permits and right-of-way decisions, is for the Court to enjoin the unlawful plan provisions before BLM can issue enforceable leases and rights-of-way to private parties.

35.     Moreover, as a practical matter, if the 2019 plan revisions are not enjoined, there is no way that the Center or others concerned with sage-grouse conservation could effectively obtaining relief against hundreds or thousands of individual oil and gas leasing/development and other BLM decisions that will damage sage-grouse habitat directly and cumulatively, many of which will be issued with minimal or no public notice or opportunity to comment.

36.     As the Government Accountability Office documented in 2017, there is virtually no public documentation of BLM decisions to grant exemptions to protective stipulations, let alone public notice and opportunity for the public to comment on or challenge those decisions prior to drilling or other activities. In its 2017 report, the GAO found that:

> The extent to which BLM approves requests for exceptions to environmentally related lease and permit requirements is unknown because BLM does not have comprehensive or consistent data on these requests. Additionally, BLM's processes for considering exception requests and documenting its decisions vary across its field offices. . . . BLM officials stated that they have generally not involved the public when considering operator requests for exceptions to lease and permit requirements. According to BLM's policy, public notification is not

DECLARATION OF MICHAEL SAUL - 16

required unless granting an exception would result in a substantial modification or waiver of a lease requirement. According to BLM officials, this is seldom the case, particularly if the exception criteria are outlined in the land use plan.

U.S. Government Accountability Office, "Improved Collection and Use of Data Could Enhance BLM's Ability to Assess and Mitigate Environmental Impacts" at 11, 20 (Report No. GAO-17-307).

38.     As a result of these BLM practices, there is no effective opportunity for public awareness or participation in BLM's waiver, exception, and modification decisions. BLM decisions in the Colorado, Idaho, Nevada/California, and Utah 2019 Sage-Grouse Plan Amendments expand BLM officials' discretion to issue waivers, exceptions, and modifications of remaining protective measures for sage-grouse habitat. Because of the difficulty of discovering, participating in, or contesting these actions prior to habitat-disturbing activity, if the 2019 Plan Amendments are not enjoined, there is no feasible means of preventing harm to greater sage-grouse and their habitat from BLM officials' exercise of their discretion to approve waivers, exceptions, and modifications to No Surface Occupancy and other protective stipulations and management measures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of April, 2019, in Denver, Colorado.

Michael A. Saul

Michael Saul

DECLARATION OF MICHAEL SAUL - 17