Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, CENTER FOR BIOLOGICAL DIVERSITY, and PRAIRIE HILLS AUDUBON SOCIETY,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID BERNHARDT, Acting Secretary of Interior; JOSEPH R. BALASH,* Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE,<br><br>*Defendants*. | Case No. 1:16-cv-00083-BLW<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT**<br>**(ECF No. 118)**<br><br>**Expedited Decision Requested** |

*\* Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

## INTRODUCTION

Federal Defendants and Intervenors State of Wyoming and Western Energy Alliance oppose Plaintiffs' Motion for Leave to File First Supplemental Complaint (ECF No. 118), asserting that *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400 (9th Cir. 1997),

Reply Brief on Motion for Leave to File First Supplemental Complaint -- 1

supposedly holds that new "claims" cannot be raised in a supplemental pleading. *See* Fed. Def. Opp. (ECF No. 120), Intervenor Opp. (ECF No. 121). That is incorrect.

As explained below, *Planned Parenthood* denied supplementation in a long-closed case where the district court did not retain jurisdiction. It thus has no bearing on the very different procedural posture of this case. Because of the closely overlapping factual and legal issues between the Complaint and [Proposed] First Supplemental Complaint here, the Court should grant the motion to supplement in the sound exercise of its broad discretion under Rule 15.

## REPLY ARGUMENT

### I.   SUPPLEMENTATION IS PROPER HERE UNDER RULE 15.

**A.  *Planned Parenthood* Does Not Bar Plaintiffs' Supplemental Claims.**

Federal Defendants argue that the Court should deny the motion to supplement under *Planned Parenthood*, because Plaintiffs' [Proposed] First Supplemental Complaint adds supplemental claims for relief and *Planned Parenthood* supposedly established a bright-line rule that a supplemental pleading "cannot be used to introduce a 'separate, distinct and new cause of action'." *See* Fed. Defs' Opp. at 1, 6–8.

Intervenors Wyoming and WEA echo that argument, and cite *Ctr. for Food Safety v. Vilsack,* 2011 U.S. Dist. LEXIS 21275 at *10 (N.D. Cal., Feb. 18, 2011), which denied a motion to supplement under *Planned Parenthood*. *See* Intervenor Opp. at 1-4.

Federal Defendants and Intervenors read *Planned Parenthood* too broadly and fail to recognize its highly unusual procedural setting, which is inapplicable here. *Planned Parenthood* did not purport to overrule or somehow limit the Ninth Circuit's prior decisions emphasizing that Rule 15(d) is to be liberally construed, including *Keith v. Volpe,* 858 F.2d 467, 473–75 (9th Cir. 1988), and *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th

Cir. 1981), both cited in Plaintiffs' opening brief. *Planned Parenthood* simply said the district court went too far under the procedural posture of that case in reviving a long-closed case through Rule 15(d) supplementation.

*Planned Parenthood* was brought as a class action to challenge an Arizona parental consent abortion law in 1989, and the district court entered a final order and permanent injunction declaring the statute unconstitutional in 1992, without any appeal—and without the district court retaining jurisdiction. *See Planned Parenthood*, 130 F.3d at 402. Several years later, the district court allowed a supplemental complaint under Rule 15 to reopen the case and challenge a subsequent parental consent abortion statute. *Id.* The Ninth Circuit's *per curiam* opinion held that the district court abused its discretion, stating—in the Conclusion—that the prior final judgment without any reservation of district court jurisdiction meant supplementation under Rule 15 was not proper, as follows:

> Because the original action between Planned Parenthood and Neely had reached a final resolution and the district court did not retain jurisdiction, we hold that it was an abuse of discretion to allow plaintiffs to supplement the complaint that formed the basis for that action, instead of requiring them to initiate a new suit.

130 F.3d at 403.

Obviously this case is nothing like *Planned Parenthood*. Plaintiffs filed their Complaint in February 2016 to challenge the 2015 Sage-Grouse Plans as not doing enough for sage-grouse, and the litigation has effectively been stayed—by concurrence of Federal Defendants and Plaintiffs—to evaluate how the Trump Administration might alter those plans. Now that BLM has adopted the 2019 Plan Amendments that reduce sage-grouse conservation requirements in Idaho and six other states, Plaintiffs seek to update the facts and claims to challenge those weakened plans, as set forth in the [Proposed] First Supplemental Complaint. The Court has not yet adjudicated Plaintiffs' original claims, which remain live despite the 2019 BLM Plan

Amendments—the 2015 Plans for Montana and the Dakotas were not revised, for example. So judgment was never entered here, nor has the case been closed for several years, as in *Planned Parenthood*.

Rather than acknowledge the unusual procedural posture and holding in the Conclusion from *Planned Parenthood*, Federal Defendants drop a footnote asserting that entry of final judgment without retaining jurisdiction there "provided only secondary support to the court's holding that new and distinct claims should be brought in a separate lawsuit." *See* Fed. Def. Opp., p. 7, n. 11. But the express language of the Conclusion, quoted above, refutes that reading—it was the fact that the prior case was closed and the district court did not retain jurisdiction that *Planned Parenthood* found dispositive.

Even the paragraph that Federal Defendants rely upon underscores this was the central reason for *Planned Parenthood*'s holding that a later supplemental complaint was improper under Rule 15, stating:

> The supplemental complaint filed by plaintiffs involved a new and distinct action that should have been the subject of a separate suit. Although both the original suit and the supplemental complaint sought to challenge Arizona's parental consent law, the supplemental complaint challenged a different statute than the one that had been successfully challenged in the original suit. Additionally, a final judgment had been rendered in the original action four years prior to plaintiffs' request to supplement their complaint. That judgment was not appealed and in no way would be affected by plaintiffs' supplemental complaint. Nor did the district court retain jurisdiction after entering that order.

*See* 130 F.3d at 402.

Indeed, *Volpe* underscores that Federal Defendants and Intervenors misread the holding of *Planned Parenthood*. The original complaint in *Volpe* was brought in 1972 and settled with a consent decree in 1981, which the district court retained jurisdiction to enforce. *See* 858 F.2d at 470–71. In 1985, plaintiffs sought to bring a supplemental complaint which the court allowed

Reply Brief on Motion for Leave to File First Supplemental Complaint -- 4

and ultimately ruled for plaintiffs. *Id.* On appeal, the Ninth Circuit described the "most significant legal issue" as the "threshold procedural one" of whether supplementation should have been allowed. It explained that denying supplementation meant the "case would have then come before a different judge, one with no prior involvement in the litigation and one not familiar with the events leading to the consent decree. We hold that allowing the supplemental complaint was well with the district court's discretion under Fed.R.Civ.P. 15(d), which is designed to permit expansion of the scope of existing litigation to include events that occur after the filing of the original complaint. We affirm." *Id.*

The Ninth Circuit went to explain that "Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings. . . .The rule is a tool of judicial economy and convenience. Its use is therefore favored." *Id.* at 473, *citing* Rule 15(d) Advisory Committee Note, and *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963), *cert. denied*, 376 U.S. 963 (1964).

Addressing the issue that Federal Defendants and Intervenors seek to seize upon now—whether new claims for relief can be added in a supplemental complaint—*Volpe* held:

> The clear weight of authority . . . permits the bringing of new claims in a supplemental complaint to promote the economical and speed disposition of the controversy. . . Professor Moore has explained the principle succinctly: While the matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of its discretion, along with such factors as possible prejudice or laches."

*Id.* at 473–74, *quoting* 3 J. Moore, Moore's Federal Practice p. 15.16 (1985).

Federal Defendants' reading that *Planned Parenthood* supposedly prohibits filing claims for relief in a supplemental pleading under Rule 15(d) thus has no basis in the language of either that case or Rule 15(d) itself. *Planned Parenthood* did not alter the Ninth Circuit's prior

interpretations of Rule 15(d) as liberally authorizing supplemental complaints in the cases cited by Plaintiffs, such as *Volpe*, 858 F.2d at 473–75. As subsequent cases have confirmed, "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines*, Inc., 621 F.3d 858, 874 (9th Cir. 2010). The only requirement is that "some relationship" exist between the original claims and those being added. *See, e.g.*, *Aten Int'l Co., Ltd v. Emine Tech. Co.*, No. SACV09-0843AGMLGX, 2010 WL 1462110, at *3 (C.D. Cal. Apr. 12, 2010) (collecting cases refuting a similar misinterpretation of *Planned Parenthood*).

As *Volpe* and subsequent case law confirm, the Court here has broad discretion to allow Plaintiffs' supplemental complaint in order to "promote economical and speedy disposition of the controversy," including by submitting the proposed supplemental claims for relief.[1]

### B. The Supplemental Complaint Is Proper, as It Sets Forth Facts and Claims Closely Related to the Existing Complaint.

Federal Defendants and Intervenors also wrongly oppose supplementation by seeking to portray Plaintiffs' [Proposed] First Supplemental Complaint as challenging entirely distinct new actions from those in the original Complaint. Plaintiffs do <u>not</u> seek to introduce a "separate, distinct and new cause of action" in this case. While a "transactional test" is not mandated under Rule 15(d), there must be "some relationship" between the newly alleged claims and the original action. *Keith*, 858 F.2d at 474. That test is abundantly satisfied here. As explained in the opening

---

[1] *Ctr. for Food Safety*, cited by Intervenors, does not somehow compel denial of supplementation here either. The district court there noted the language of *Planned Parenthood* about not allowing a "separate, distinct and new cause of action," but denied supplementation to challenge a new agency decision because another existing case, in a different forum, already challenged that action and included the same parties. Thus, the court found that "the interest of judicial economy likely would be better served by presenting Plaintiffs' request for injunctive relief in [the other lawsuit] rather than in this Court." *See* 2011 U.S. Dist. LEXIS 21275 at *9–*15.

brief, Plaintiffs seek to supplement the facts and claims in their original Complaint by identifying events, and challenging related final actions, that occurred after the Complaint was filed, in which they present very similar claims for relief under NEPA, FLPMA and the APA as the original Complaint.

It is difficult to understand how Federal Defendants could try to portray the [Proposed] First Supplemental Complaint as addressing wholly separate and distinct final actions from the 2015 Plans challenged in the original Complaint, when the 2019 BLM Plan Amendments (and related revocation of the proposed SFA mineral withdrawal and compensatory mitigation policies) all directly impact conservation of greater sage-grouse on public lands, undermining measures put in place under the prior Administration through the 2015 Plans, and exposing sage-grouse to further habitat losses and population declines. The whole point of the original Complaint was to challenge the 2015 Sage-Grouse Plans for not doing enough to conserve sage-grouse, under the best available science; while the whole point of the [Proposed] First Supplemental Complaint is to challenge the Trump Administration's actions now to weaken those protections. Plaintiffs seek sage-grouse conservation as the overriding goal of this litigation, and the Federal Defendants' steps taken now to move backward in sage-grouse protections are properly identified for challenge under Rule 15(d).

Plaintiffs have just filed a Motion for Preliminary Injunction, which includes extensive briefing plus expert and standing declarations addressing the many ways that the 2019 BLM Plan Amendments have gutted sage-grouse protections under the 2015 Plans, in violation of NEPA and the APA. *See* ECF Nos. 124–125. As discussed in the expert declarations of Drs. Clait Braun and Amy Haak, the 2015 Plans did not go far enough in identifying priority sage-grouse habitats for protection from energy development and other threats (as the Complaint alleges),

while the 2019 Plan Amendments now reduce those priority habitat protections and allow more energy and other development to harm sage-grouse.  *See* ECF Nos. 124-3, 124-7.

Federal Defendants' argument that the 2019 Plan Amendments are different than the 2015 Plans because they were approved by individual BLM state directors is a red herring.  The Department of Interior issued the August 2017 Sage-Grouse Review Team Report that recommended weakening the 2015 Plans across the sage-grouse range, following industry bidding; BLM announced the 2019 Plan Amendment process in a single Federal Register notice in October 2017; and now-Secretary of Interior David Bernhardt has been the architect of weakening the sage-grouse plans throughout the process from beginning to end—he even publicly announced the BLM amendments in March 2015.  *See* [Proposed] First Supplemental Complaint ¶¶ 2-6, 21-47; Plaintiffs' Opening Brief in Support of Motion for Preliminary Injunction, at 8-11, ECF No. 124-1; Hartl Declaration ¶ 18, ECF No. 124-8 (providing link to news report on Bernhardt March 2019 announcement).

Moreover, BLM has misrepresented the 2019 Plan Amendments as supposedly building upon and improving the 2015 Plans—a flat misrepresentation that Plaintiff expose in detail in their preliminary injunction motion, and which underscores the close interrelationship between the 2015 Plans (challenged in the Complaint) and the 2019 Plans (challenged in the [Proposed] First Supplemental Complaint).  *See* Plaintiffs' Opening Brief in Support of Motion for Preliminary Injunction, at 23–26, ECF No. 124-1. Plaintiffs' opening brief further establishes that BLM violated NEPA in approving the 2019 Amendments based on six separate Environmental Impact Statements (EISs) without taking any range-wide look at sage-grouse conservation needs or overarching threats (such as climate change), just as BLM committed the same NEPA violations in approving the 2015 Plans based on a fragmented array of 15 EISs,

none of which evaluated range-wide issues. *Id.* at 27–29.

Additionally, the 2019 Plan Amendments did not amend the 2015 Plans for Montana and the Dakotas, showing that Plaintiffs' challenges to the 2015 Plans remain live and justiciable. Plaintiffs seek to enjoin application of the 2019 Plans until their challenges are resolved on the merits—at which point the 2015 Plans will be reinstated because the 2019 Plans were unlawfully adopted. At that point, Plaintiffs' challenges in the original Complaint will again be fully ripe and appropriate for judicial review.

All of these factors demonstrate that Plaintiffs satisfy Rule 15(d) abundantly here: The Court is very familiar with the facts, science and law already; Plaintiffs' claims in the original complaint are closely intertwined with those in the supplemental complaint; and adjudicating all the claims together best serves "to promote the economical and speed disposition of the controversy." *See Volpe*, 858 F.2d at 470–71; *see also San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of Int.*, 236 F.R.D. 491, 499 (E.D. Cal. 2006) (the court's "extensive knowledge of the relevant law, background, and scientific considerations" favored supplementation); *Tucson Herpetological Society v. Kempthorne*, 2006 WL 2788643 (D. Ariz. 2006) (allowing supplemental pleadings based on "the court's experience with the case").

Finally, it bears noting that neither Federal Defendants nor Intervenors claim any kind of prejudice if supplementation is allowed. Courts "liberally construe Rule 15(d) absent a showing of prejudice to the defendant." *Keith*, 858 F.2d at 475. Accordingly, the Court should grant Plaintiffs' motion to supplement under Rule 15(d).

II. **IF SUPPLEMENTATION IS DENIED, THE COURT SHOULD DIRECT THAT THE NEW COMPLAINT BE ASSIGNED TO IT.**

Finally, if the Court were to deny the motion for leave to file a supplemental complaint, Plaintiffs will promptly file a new complaint and respectfully submit that the Court should direct

that the new complaint be assigned to it, in light of the close overlap between this action and the new one. As demonstrated in prior cases cited by Federal Defendants, such considerations led the Court to direct that the new cases be assigned to it when denying other motions to supplement. *See* Memorandum Decision & Order (ECF No. 203), *Western Watersheds Project et al. v. U.S. Forest Service*, No. 4:07-cv-151-BLW, 2012 WL 2019961 (D. Idaho, June 4, 2012) (denying motion to reopen prior bighorn sheep grazing litigation and directing that when WWP files the new case, "that case shall be assigned to this Court because this case and the new filing have so many factual and legal issues in common"); *W. Watersheds Project v. Zinke,* No. 08-cv-1435-BLW, 347 F. Supp.3d 554 (D. Idaho 2018) (denying motion for leave to supplement but stating that "any new case filed with these claims will be assigned to this Court").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully pray that the Court grant this Motion and authorize filing of the [Proposed] First Supplemental Complaint; or in the alternative, if supplementation is denied, direct that the new case filed by Plaintiffs be assigned to it in light of the close overlap between the two actions.

Dated this 22nd day of April, 2019.          Respectfully submitted,

*/s/ Laurence ("Laird") J. Lucas*
Laurence ("Laird") J. Lucas (ISB # 4733)
Todd C. Tucci (ISB # 6526)
Sarah Stellberg (ISB #10538)
*Advocates for the West*

Attorneys for Plaintiffs