David C. McDonald (NY No. 5539424)
(*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado  80227
(303) 292-2021
(303) 292-1980 (fax)
dmcdonald@mslegal.org

John L. Runft (ID No. 1059)
RUNFT & STEELE LAW OFFICES, PLLC
1020 West Main Street, Suite 400
Boise, Idaho  83702
(208) 333-8506
(208) 343-3246 (fax)
jrunft@runftsteele.com

*Attorneys for Defendant-Intervenors*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BERNHARDT, Secretary of Interior; JOSEPH R. BALASH, Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE, <br><br> Defendants, <br><br> and <br><br> PETROLEUM ASSOCIATION OF WYOMING and WYOMING STOCK GROWERS ASSOCIATION, <br><br> Defendant-Intervenors. | No. 1:16-cv-00083-BLW <br><br><br><br><br><br> **OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT** |

**INTRODUCTION**

Federal district courts have a duty to ensure that they have jurisdiction over a case or controversy at all stages of the litigation. If events occur during the course of litigation that reveal a district court's lack of jurisdiction, the court should properly address that point. Defendant-Intervenors Petroleum Association of Wyoming ("PAW") and Wyoming Stock Growers Association ("WSGA") oppose Plaintiffs' Motion for Leave to File First Supplemental Complaint because the Federal District Court for the District of Idaho is an improper venue for the claims involving Wyoming property raised in the Proposed Supplemental Complaint.

In addition, motions to file supplemental complaints—while frequently appropriate—cannot be used to introduce separate, distinct, and new causes of action. Federal Defendants, as well as Defendant-Intervenors Wyoming, and Western Energy Alliance, more than adequately address Plaintiffs' attempt to graft new and distinct causes of action to this case. ECF Nos. 118, 120, 121. Pursuant to this Court's Order granting PAW and WSGA intervention, ECF No. 84, and in the interest of judicial efficiency, Defendant-Intervenors PAW and WSGA will not duplicate those arguments and instead incorporate them herein by reference.

**BACKGROUND**

On February 25, 2016, Plaintiffs Western Watersheds Project, WildEarth Guardians, Center for Biological Diversity, and Prairie Hills Audubon Society filed the original Complaint initiating this matter, challenging the Bureau of Land Management ("BLM") and National Forest Service's ("Forest Service") September 2015 final Environmental Impact Statements (EISs), Records of the Decision (RODs), and federal land use plan amendments for the Greater Sage Grouse ("2015 Plans"). ECF No. 1. On July 13, 2017, this Court stayed these proceedings due to the BLM and Forest Service's decision to amend the 2015 Plans. ECF No. #96. On March 15,

2019, the BLM issued six new RODs individually addressing management in Idaho, Colorado, Wyoming, Utah, Nevada/Northeastern California, and Oregon ("2019 Plans"). *See* 84 Fed. Reg. 10322 (Mar. 20, 2019).

On March 27, 2019, Plaintiffs moved this Court for leave to file a supplemental complaint. ECF No. 118. Federal Defendants filed their Opposition to Plaintiffs' Motion on April 17, 2019, as did Defendant-Intervenors Wyoming and Western Energy Alliance. ECF Nos. 120, 121.

## ARGUMENT

The Federal District Court for the District of Idaho is not a proper venue for Plaintiffs' supplemental claims concerning the Wyoming ROD—or for any of the five non-Idaho RODs. The federal venue statute states, in relevant part:

> A civil action in which a defendant is an officer or employee of the United States . . . acting in his official capacity . . . or an agency of the United States . . . may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). Defendants' place of residency is clearly not a basis for venue in this litigation, as Defendants' official residences are located in Washington, D.C. *See Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C. 1993) ("When an officer or agency head performs a 'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue."); ECF No. 46-1 at 18.[1]

---

[1] In alternative to the relief requested below, should this Court determine Plaintiffs can and should be allowed to supplement their original complaint in this matter, then this Court should transfer this case to the United States District Court for the District of Columbia, where venue would be appropriate. *See Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C. 1993) ("When an officer or agency head performs a 'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue.")

Plaintiffs assert in their Proposed Supplemental Complaint that venue is proper in this court both because Plaintiff Western Watersheds Project ("WWP") resides in Idaho and because a substantial part of the events giving rise to the relief request in the Proposed Supplemental Complaint occurred in Idaho. ECF No. 118-2, at ¶ 10. This argument is incorrect. The location of WPP's residence is irrelevant in this matter since this case involves a substantial effect on real property, meaning that the only appropriate basis for venue in Idaho must be that a substantial part of the events giving rise to the action took place in Idaho.

The legislative history of the federal venue statute makes it clear that Congress intended to protect real property interests when it amended section 1391(e) to allow for venue based on plaintiffs' residence only in cases that do not involve a substantial effect on real property—the leases owned by PAW and WSGA's members are precisely these sorts of real property interests. As then-Deputy Attorney General Byron White explained:

> The principal demand for this proposed legislation comes from those who wish to seek review of decisions relating to public lands, such as *the awarding of oil and gas leases*, consideration of land patent applications and *the granting of grazing rights* or other interests in the public domain. The applicants may reside in any State, or several States of the Union, and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming.

S. Rept. No. 1992, 87th Cong., 2d Sess., reprinted in (1961) U.S. Code Cong. & Adm. News 1789 (emphasis added). The Senate report adopted this reasoning: "Frequently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights. These are problems with which judges in those areas are familiar and which they can handle expeditiously and intelligently." *Id.* at 2786. Lawsuits like the one before this Court, based solely on the federal government's regulation of such oil and gas and grazing leases and permits, are clearly among the "decisions relating to public lands" that Congress intended to be tried in local districts.

In *Landis v. Watt*, 510 F. Supp. 178 (D. Idaho 1981), this Court held that, for venue purposes under section 1391, "29 oil and gas leases which have been rejected or canceled" constituted real property. *Id.* at 180. The court also made the closely related point that plaintiffs' request for the leases to be reinstated "support[ed] the proposition that real property is involved and venue in Idaho is improper." *Id.*[2] The District Court for the District of Nevada has similarly held that a suit against state and federal officials seeking declarative relief that the plaintiff's applications for oil and gas leases were improperly rejected was a suit involving real property that required a change in venue. *Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nevada 1983) ("For purposes of § 1391(e) an action involves real property if it is a suit involving the protection or recovery of real property or an estate therein."). The court specified that "[t]he touchstone . . . cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property." *Id.* (quoting *Nat. Resources Defense Council v. TVA*, 340 F. Supp. 400, 406 (S.D.N.Y. 1971)). The court concluded:

> The proposition that an action for declaratory relief to hold void and unenforceable any statutes, rules, regulations or practices which prescribe essential preliminary steps or procedures to initiate entry on the public lands of the United States under the public land laws is not an action involving real property is a legal sophistry. The obvious and undeniable purpose of such an action is to place the public officials in a position which will require them to accept applications, issue permits, grant entry, or whatever, to the end that plaintiff will acquire the real property interest he seeks. Such an action does involve real property.

---

[2] While the court held that venue in Idaho was improper, it also refused to dismiss the case and force plaintiffs to re-file three separate actions in different district courts. The court did so because it was relying on an older, since superseded, version of section 1391 that stated a suit can be brought in "any judicial district in which . . . *any* real property involved in the action is situated . . . ." *Id.* (emphasis added) (quoting 28 U.S.C. § 1391(e)(3), *superseded by* 28 U.S.C. § 1391(e)(1)). Since at least some of the property at issue was located in Montana, the entire case could therefore be transferred to the District of Montana. The current version of the statute replaced "any real property" with "a substantial part of property." 28 U.S.C. § 1391(e)(1).

*Id.* In *Santa Fe Intern. Corp. v. Watt*, 580 F. Supp. 27 (D. Del. 1984), the District Court for the District of Delaware recognized that, while the "general legislative intent behind section 1391(e)" was "to broaden the venue of civil actions which could previously have been brought only in the District of Columbia," it did not do so "without limitation." *Id.* at 29–30. The court also stated that the "275 oil and gas leases on 252,950 net acres of government land" and "95 [pending] applications for [Mineral Lands Leasing Act of 1920] oil and gas leases" constitute real property, but ultimately decided that the case did not *involve* that real property because "[t]he pivotal issue in this case" was not a dispute over real property, but the validity of the Secretary of the Interior's "determination under the alien qualification provision of the Mineral Lands Leasing Act." *Id.* at 28–31. The court distinguished *Santa Fe* from *Landis* and *Ferguson* because it was primarily concerned with an issue "that was divorced from any substantial concern relating to the leasing of particular local lands."

More recently, in 2009, the District Court for the Northern District of California granted the BLM's motion to dismiss or transfer a lawsuit quite similar to the present action for improper venue. *Center for Biological Diversity v. BLM*, No. C 08-05646, 2009 WL 1025606 (N.D. Cal. Apr. 14, 2009). In that case, environmentalist organizations challenged the BLM's adoption of the Coachella Valley Plan amendment to the California Desert Conservation Area Plan, claiming deficiencies in the agency's attempted compliance with the Administrative Procedure Act, National Environmental Policy Act, and other statutes. *Id.* at *1. The court described the challenged plan as governing "a range of real property issues, including access to public and private lands, rights of way and easements across these lands, land withdrawals, and land exchanges and acquisitions." *Id.* The court, in holding that venue should be transferred to the Central District of California, noted that "this action directly concerns the management of lands

under the FLPMA and the [BLM]'s adoption of a land use plan for a large area of property located within the Central District of California." *Id.* at *3. The court also adopted the reasoning in *Ferguson* and found that "the proposition that this action challenging Defendants' adoption of Coachella Valley Plan is not an action involving real property would be 'legal sophistry.'" *Id.* (quoting *Ferguson*, 565 F. Supp. At 1015). The 2019 Plans, like the Coachella Valley Plan, each govern "a range of real property issues, including access to public and private lands, rights of way and easements across these lands, land withdrawals, and land exchanges and acquisitions." *Id.* at *1.

The present action is not merely tangentially related to real property, but directly effects numerous, significant real property interests.[3] As Plaintiffs readily state in their Proposed Supplemental Complaint, many leases for grazing and oil and gas development would be impacted were Plaintiffs granted the relief they seek. *See* ECF No. 118-2 at ¶¶ 6, 126, 127, 120.[4] The specific relief Plaintiffs seek, if granted, would necessarily imperil the real property interests of many PAW and WSGA members, by Plaintiffs' own admission.

The situation here is closely analogous to that in *CBD v. BLM*. The Wyoming ROD, for example, addresses the withdrawal of public lands from mineral entry, the setting of acceptable noise levels, the re-designation of areas previously proposed in the 2015 Plans to be withdrawn from mineral entry to now allow for mineral location and entry, and the modification of compensatory mitigation requirements—issues involving real property located in Wyoming, not Idaho. *See* Wyoming Greater Sage-Grouse Approved Resource Management Plan Amendment

---

[3] Oil and gas leases and grazing permits are not always considered real property for purposes of, for example, takings claims, but, as demonstrated *supra*, cases like this one that center around land management decisions directly impacting such leases and permits are exactly the sort of cases "involving real property" contemplated in 28 U.S.C. § 1391(e)(1).

[4] Note, ¶ 120 appears twice in Plaintiffs' proposed complaint. Defendant-Intervenors here cite to the second iteration, which appears on page 34.

and Record of Decision at 16–21, https://eplanning.blm.gov/epl-front-office/projects/lup/103347/168776/205593/WY_ROD_03142019_signed.pdf. The focus of this action is on the details of the federal government's management of real property, like in *CBD v. BLM*, unlike the dispute in *Santa Fe*, which centered around issues of international law and diplomacy, only involving real property tangentially.

While Plaintiffs will likely contend that this Court found venue was appropriate even though the 2015 Plans also had a substantial effect on real property, this issue has changed, due to the Plaintiffs' own attempt to supplement their challenge. The Court's previous venue determination has no bearing on the current analysis, and the two situations are not analogous. The 2015 Plans were the result of a centrally planned, region-wide approach. In contrast, the 2019 RODs are based upon independent considerations by the various affected states, relating specifically to the real property located within each individual state's jurisdiction *See* 84 Fed. Reg. 10322 (Mar. 20, 2019). All but one of the 2019 RODs challenged by Plaintiffs in their Proposed Supplemental Complaint—independently developed by separate BLM state offices in separate states—were developed and implemented outside of Idaho. While *some* of the events giving rise to this action occurred in the state, and *some* of the property at issue is located in the state, a *substantial* portion of the events and property at issue have little-to-no relationship with Idaho. Venue is therefore improper in this court for any and all claims not arising out of events or real property located in Idaho, and Plaintiffs' Motion for Leave to File Supplemental Complaint should be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons set out in Federal Defendants and Defendant-Intervenors Wyoming and Western Energy Alliance's Opposition briefs, ECF Nos.

120, 121, this Court should deny Plaintiffs' Motion for Leave to File First Supplemental Complaint.

DATED this 1st day of May, 2019.

Respectfully submitted,

/s/ David C. McDonald
David C. McDonald (NY No. 5539424)
(*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
dmcdonald@mslegal.org

John L. Runft (ID No. 1059)
RUNFT & STEELE LAW OFFICES, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
jrunft@runftsteele.com

*Attorneys for Defendant-Intervenors*

## CERTIFICATE OF SERVICE

      I hereby certify that, on the 1st day of May, 2019, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Idaho using the CM/ECF system which sent a Notice of Electronic filing to all parties of record.

      /s/ David C. McDonald
      David C. McDonald (NY No. 5539424)
      (*pro hac vice*)
      MOUNTAIN STATES LEGAL FOUNDATION