Laurence ("Laird") J. Lucas (ISB # 4733)
llucas@advocateswest.org
Todd C. Tucci (ISB # 6526)
ttucci@advocateswest.org
Sarah Stellberg (ISB #10538)
sstellberg@advocateswest.org
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, CENTER FOR BIOLOGICAL DIVERSITY, and PRAIRIE HILLS AUDUBON SOCIETY,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>DAVID BERNHARDT, Secretary of Interior; JOSEPH R. BALASH\*, Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE,<br><br>    *Defendants*. | No. 1:16-cv-00083-BLW<br><br>**PLAINTIFFS' BRIEF OPPOSING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR TO SEVER AND TRANSFER CLAIMS (ECF No. 164)** |

*\* Official Defendant automatically substituted per Fed. R. Civ. P. 25(d)*

## INTRODUCTION

Federal Defendants' Motion to Dismiss or Sever/Transfer Venue (ECF No. 164) again contests Plaintiffs' choice of the District of Idaho as a proper venue to challenge the inadequacy of federal land use plans to conserve greater sage-grouse across the species' range in Idaho and other western states. But Defendants' venue arguments have no more merit now than the prior occasions they raised and lost them in this and related cases before this Court. *See W. Watersheds Proj. v. Schneider*, No. 1:16-cv-083-BLW, 2017 WL 874568 (D. Idaho March 3, 2017) (ECF No. 86) (*Schneider*) (denying motion to sever and transfer venue in this case); *W. Watersheds Proj. v. Salazar*, No. 4:08-cv-516-BLW, 2009 WL 1299626 (D. Idaho May 7, 2009) (*Salazar I*) (denying similar motion to dismiss or to sever and transfer venue in prior BLM sage-grouse litigation) & ECF No. 58 (denying motion to reconsider same); *W. Watersheds Proj. v. Salazar*, No. 4:08-cv-0435-BLW, 2010 WL 375003 (D. Idaho Jan. 25, 2010) (*Salazar II*) (denying motion to dismiss for improper venue); *W. Watersheds Proj. v. Zinke*, No. 1:18-cv-187-REB, 2018 WL 4210774 (D. Idaho Sept. 4, 2018) (*Zinke*) (denying motions to sever and transfer claims challenging oil and gas leasing and development in sage-grouse habitats).

Indeed, Defendants cite no new case or other authority in repeating their erroneous argument that venue is not proper in this District under the federal venue statute, 28 U.S.C. § 1391(e), where Plaintiff Western Watersheds Project (WWP) resides and has brought other cases to protect sage-grouse in Idaho and other states. As the Court correctly ruled before, Plaintiffs' NEPA and FLPMA claims challenging the adequacy of federal land use plans to conserve sage-grouse do <u>not</u> "involve real property" under § 1391(e)(1)(C), so Plaintiffs may properly sue here where Plaintiff WWP is headquartered. Venue is also proper under § 1391(e)(1)(B) for Plaintiffs to challenge the 2019 Idaho Plan Amendments in this District and to bring their common legal

challenges to the other 2019 BLM Plan Amendments here under the pendent venue doctrine. Because Plaintiffs' choice of venue is correct under both § 1391(e)(1)(B) and § 1391(e)(1)(C), Defendants' Rule 12(b)(3) motion to dismiss for improper venue must be denied.

Likewise, the Court should deny Defendants' motion for discretionary severance and venue transfer of the non-Idaho Plan Amendments to other states, for the same reasons as it should deny Intervenors' nearly-identical motions to sever and transfer venue (ECF Nos. 144, 147 & 148), which Plaintiffs previously opposed (ECF No. 154). Defendants fail to overcome the heavy deference given to Plaintiffs' choice of this venue, and wrongly refuse to acknowledge that the interests of judicial economy and efficiency would be harmed—not served—by severing Plaintiffs' single case into six cases in five different districts, on top of this one. Simply put, there is no court better situated to adjudicate Plaintiffs' common legal challenges to the Trump Administration's sage-grouse rollbacks than this Court. Accordingly, the Court should deny Federal Defendants' venue motion and the similar Intervenor venue transfer motions.

<u>**STATEMENT OF RELEVANT FACTS**</u>

Plaintiffs filed the Complaint in this action on February 25, 2016, to challenge the 2015 Sage-Grouse Plans approved by BLM and Forest Service as the culmination of their National Greater Sage-Grouse Planning Strategy. *See* Complaint ¶¶ 1–13, 84–133, ECF No. 1.

The Complaint acknowledged that the 2015 Sage-Grouse Plans represent a step forward in sage-grouse conservation, but identified legal, scientific, and factual deficiencies underscoring that they would fail to ensure sage-grouse conservation into the future. *Id.* Among these defects, Defendants used fifteen Environmental Impact Statements (EISs) that improperly "segmented" their NEPA analysis and failed to take a range-wide "hard look" at sage-grouse threats and conservation needs, including impacts of climate change and connectivity between sage-grouse

PLS.' OPPOSITION TO FED. DEF'S VENUE MOTION --                                    2

habitats and populations; they refused to designate Sage-Grouse Areas of Critical Environmental Concern (ACECs) to protect sage-grouse across the range, in violation of FLPMA; and the Plans varied considerably their designations of priority habitats, surface disturbance protections, and other management measures, falling short of requirements established by the best available science. *Id.* ¶¶ 134–312.

Several other lawsuits were filed in other venues by states, local governments, and/or industries seeking to reverse and set aside the 2015 Sage-Grouse Plans. On March 3, 2017, this Court denied Federal Defendants' prior motion to sever and transfer Plaintiffs' claims to those other jurisdictions, as noted above. *See Schneider*, 2017 WL 874568. However, because the incoming Trump Administration began the process to review and revise the 2015 Sage-Grouse Plans soon thereafter, further litigation on Plaintiffs' challenges to the 2015 Plans in this case has effectively been on hold pending further final actions on the Plans. *See* ECF Nos. 94–116.

Contrary to Defendants' (and Intervenors') assertions that the 2019 BLM Plan Amendments were separate decisions that must be individually adjudicated, the record before the Court confirms that the Trump Administration pursued weakening sage-grouse conservation protections as a centrally-driven process in response to its "energy dominance" agenda for public lands, led by former Interior Secretary Zinke and current Secretary Bernhardt. *See* First Suppl. Compl. ¶¶ 21–87.

Specifically, on June 7, 2017, then-Interior Secretary Zinke issued Secretarial Order (SO) 3353, "Greater Sage-Grouse Conservation and Cooperation with Western States," which established a DOI "Sage-Grouse Review Team" to review the 2015 Sage-Grouse Plans and recommend modifications to "enhance State involvement," among other directives. *See* ECF No. 94; First Suppl. Compl. ¶ 39. On August 4, 2017, the Review Team issued a "Report In

Response To Secretarial Order 3353," which made recommendations to modify the 2015 Sage-Grouse Plans to relax restrictions on energy development, mining, livestock grazing, and other developments in sage-grouse habitats. *Id.* The same day, then-Secretary Zinke issued a memorandum directing BLM to "immediately begin implementing the short- and long-term recommendations in the Report." *Id.*

On October 24, 2017, then-Deputy Secretary Bernhardt issued a "Review of the Department of Interior Actions that Potentially Burden Domestic Energy," calling for review of BLM's sage-grouse plans for the purpose of "giving appropriate weight to the value of energy and other development on public lands." First Suppl. Compl. ¶¶ 46–47. Bernhardt stated that the objective of BLM's review would be that "industry will have greater certainty in leasing, exploration and production activities due to availability of acreage for oil and gas development," and that "BLM will measure success by assessing changes in industry's interest in nominating acreage for competitive sale and developing existing leases in areas affected by the Greater Sage-grouse amendments to RMPs." *Id.*

BLM initiated the amendment process by publishing a single notice in the Federal Register in October 2017, announcing the new NEPA/land use planning process to "consider the possibility of amending some, all or none" of the 2015 Sage-Grouse Plans, and invited public scoping comments. *See* 82 Fed. Reg. 47,248 (Oct. 11, 2017).

Meanwhile, Federal Defendants moved forward to rescind other aspects of the 2015 Sage-Grouse Plans, including by abruptly cancelling the proposed SFA mineral withdrawal on the same day as BLM announced the new RMP amendment process. *See* 82 Fed. Reg. 47,248 (Oct. 11, 2017); First Suppl. Compl. ¶¶ 48–60. They also rescinded Interior's policy requiring compensatory mitigation to offset adverse impacts of oil and gas and other development on

public lands, citing a radical re-interpretation that "FLPMA does not explicitly mandate or authorize the BLM to require public land users to implement compensatory mitigation as a condition of obtaining authorization for the use of the public lands." First Suppl. Compl. ¶¶ 25–37.  All of the 2019 BLM Plan Amendments reiterated that rationale in revoking the 2015 Plans' requirements for compensatory mitigation to achieve a "net conservation gain" for sage-grouse. *Id.* ¶¶ 92–96.

On May 4, 2018, BLM published Federal Register notices to announce the availability of Draft EISs and draft proposed plan amendments to revise the 2015 Sage-Grouse Plans in Idaho, Colorado, Wyoming, Utah, Nevada/Northeastern California, and Oregon, with "Supplementary Information" sections that identically described the revision process. *See* 83 Fed. Reg. 19,800–19,811 (May 4, 2018). On December 7, 2018, a single Federal Register notice announced that Final EISs and proposed plan amendments were available for public protest and Governor consistency review periods. *See* 83 Fed. Reg. 63,161 (Dec. 7, 2018).

On March 15, 2019, then-Acting Interior Secretary Bernhardt publicly announced that BLM had issued RODs to adopt the 2019 BLM Plan Amendments for the seven states. First Suppl. Compl. ¶ 82. On March 20, 2019, BLM published Notices of Availability of the RODs, and stated that the plan amendments were "effectively immediately." 84 Fed. Reg. 10,322–10,330 (Mar. 20, 2019).

Plaintiffs moved quickly to challenge the 2019 BLM Plan Amendments and the related SFA withdrawal cancellation and unlawful revocation of compensatory mitigation requirements through the [Proposed] First Supplemental Complaint submitted on March 27, 2019, along with a motion for leave to supplement. ECF No. 118.

The Court granted leave to supplement on May 2, 2019. ECF No. 138. It ruled that supplementation was proper under Rule 15(d) because of the close overlap between the original Complaint and proposed First Supplemental Complaint—including that the 2019 BLM Plan Amendments did not replace or modify all the 2015 Plans challenged in the Complaint, and Plaintiffs challenged the 2019 Amendments on many similar grounds as the 2015 Plans. *Id.* at 3. These common claims, the Court noted, include the failure to take a range-wide analysis, evaluate climate change impacts, designate Sage-Grouse ACECs, or adopt adequate regulatory mechanisms to protect sage-grouse habitats and populations. *Id.* Plaintiffs filed the First Supplemental Complaint on May 3, 2019. ECF No. 139.

Plaintiffs filed a Motion for Preliminary Injunction on April 19, 2019, seeking to prohibit Federal Defendants from implementing the 2019 BLM Plan Amendments and keeping the 2015 Plans in place until their supplemental claims can be adjudicated. *See* ECF Nos. 124–25. Pursuant to the Court's briefing schedule, ECF No. 136, Federal Defendants filed their opposition to the injunction motion on May 31, 2019 (ECF No. 149), and Plaintiffs filed their reply to Federal Defendants' opposition on June 14, 2019 (ECF No. 165). Intervenors filed their injunction responses on the same day (ECF Nos. 155–63), to which Plaintiffs filed a reply on June 28, 2019 (ECF No. 172). No hearing has been set yet on the injunction motion.

Several Intervenors recently moved to sever and transfer Plaintiffs' supplemental claims challenging the 2019 BLM Sage-Grouse Plan Amendments to five—or maybe six—other district courts in two appellate circuits, leaving only the Idaho amendments before this Court. *See* ECF Nos. 144 (Utah/Wyoming), 147 (Wyoming Stock Growers Ass'n *et al.*), and 148 (Idaho brief, joining other motions). Plaintiffs opposed those motions on June 11, 2019 (ECF No. 154). The analysis in that opposition brief is fully applicable here, since Federal Defendants make nearly

identical arguments in support of their motion to sever and transfer.  However, only Federal Defendants have moved to dismiss for improper venue under Rule 12(b)(3).  As explained below, because Defendants provide no new reason for the Court to reconsider its prior rejection of the same arguments, and the prior venue rulings were and remain correct, the Court should deny Federal Defendants' latest venue challenges.

**ARGUMENT**

**I.   VENUE IS PROPER IN THE DISTRICT OF IDAHO.**

Defendants move to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), arguing that Plaintiffs' supplemental claims challenging the 2019 BLM Plan Amendments "involve" real property within the meaning of 28 U.S.C. § 1391(e)(1)(C), and therefore venue cannot be based on Plaintiff WWP's residence in Idaho.  *Se*e Defs Open. Br. (ECF No. 164-1) at 3-8.  They make the exact same arguments they previously made—and lost—before this Court in *Salazar I & II* about the meaning of "real property is involved" under subsection (C) in 28 U.S.C. § 1391(e)(1), but contend that the Court's previous analysis was wrong and should be reconsidered. *Id.*

As explained below, Federal Defendants provide no convincing reason for the Court to reconsider its prior reading, and Plaintiffs' choice of venue in the District of Idaho is proper under both subsections (B) and (C) of 28 U.S.C. § 1391(e)(1), so the motion to dismiss for improper venue must be denied.

**A.   Venue is Proper Under Subsection (B) Because "A Substantial Part Of The Events Or Omissions" Occurred in Idaho, and the Remaining Claims Are Closely Related.**

The Court must deny the motion to dismiss, first, because venue for Plaintiffs' supplemental claims is proper in this District under subsection (B) of the federal venue statute and the pendent venue doctrine.

Subsection B provides for venue against federal defendants in any district where "a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(e)(1)(B). Idaho is a proper venue under subsection (B) for Plaintiffs' supplemental claims challenging the 2019 BLM Plan Amendments including for Idaho. *See* First Suppl. Compl. ¶¶ 10, 82-83, 143-178.  The Record of Decision approving the 2019 Idaho Plan Amendments was signed by BLM's Acting Idaho State Director. ID 18. The 2019 Idaho Plan Amendments weaken sage-grouse protections on BLM lands in Idaho, threatening Idaho populations of sage-grouse and the interests of many Idaho-based members of the Plaintiff organizations—not least of which is WWP, headquartered in Idaho with many staff and members here who are harmed by the challenged decisions. *Id.*; *see also* Braun, Carter, Connelly, Haak, Marvel, and Molvar Declarations, ECF Nos. 124-3, 124-4, 124-5, 124-7, 124-12, and 124-14. Thus, a "substantial part" of the events giving rise to Plaintiffs' challenges to the 2019 Idaho Plan Amendments unquestionably arose in Idaho, and venue is proper here under subsection (B).

Because venue is proper for the Idaho 2019 Plan Amendments under subsection (B), the Court may exercise "pendent venue" over the remaining, closely-related claims. "[U]nder the pendent venue doctrine, when one or more claims are closely related (e.g., arise out of a common nucleus of operative facts), venue is proper as to all claims so long as venue is established for just one claim. This is because, where there is a close relationship, then judicial economy, convenience, and fairness all weigh in favor of adjudication in one proceeding." *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1089 (N.D. Cal. 2018); *see also McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 964-65 (N.D. Cal. 2012) (noting that "the court may find pendent venue for claims that are closely related" when justified by "principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to

the litigants"); *see also Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1984), abrogated on other grounds by *Smith v. United States*, 507 U.S. 197 (1993) ("Whether to apply the principle of pendent venue in any given case is a discretionary decision, based on  . . . [considerations of] judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants").

Here, Plaintiffs' challenges to the Idaho amendments have substantial factual and legal overlap with their challenges to the other 2019 BLM Plan Amendments.  *See* First Suppl. Compl. ¶¶ 88-143 & App. A. As described above, Defendants used a centrally-driven process to weaken BLM's 2015 Sage-Grouse Plans, and Plaintiffs challenge common elements and defects in all the 2019 Amendments and their NEPA documents, including revoking the prior requirements for compensatory mitigation with no net loss, refusing to consider any meaningful alternative to the Administration's chosen path of weakening the 2015 Plans, and reducing or weakening habitat designations and protections without acknowledging the potential adverse effects. *Id.* Plaintiffs' injunction opening brief (ECF No. 124-1) explained in detail how Plaintiffs' NEPA claims apply to all of the 2019 BLM Plan Amendments, not just Idaho's—yet Federal Defendants ignore that briefing and arguments in their motion to dismiss. Even the partial Administrative Record filed by Federal Defendants for the injunction motion confirms that the 2019 Plan Amendments were the result of the directives issued under the Trump Administration and the centrally-driven process at the Department of Interior, including the August 2017 DOI Report which recommended weakening the 2015 Plans in ways that BLM adopted.  *See* "Rangewide AR" (ECF No. 146). Moreover, the same considerations of fairness, judicial economy, and avoidance of piecemeal litigation that counsel against discretionary venue transfer, *see infra* Section II, also favor the exercise of pendent jurisdiction here.

In sum, where the Idaho amendments unquestionably may be challenged in this district

under 28 U.S.C. § 1391(e)(1)(B), and where Plaintiffs have common factual and legal challenges to all the related 2019 BLM Plan Amendments, venue is proper in this district to consider all the related claims together. Thus, the motion to dismiss must be denied.

**B.    Venue Is Also Proper Here Under Subsection (C).**

Federal Defendants focus their motion to dismiss on the next part of the federal venue statute—subsection (C)—which allows a plaintiff naming federal defendants to bring suit in "any judicial district in which . . . (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C).  It is undisputed that Plaintiff WWP "resides" in the District of Idaho because it is incorporated and headquartered in Idaho, so venue is proper here under subsection (C) unless "real property is involved" within the meaning of the statute.

But "real property" is <u>not</u> "involved" here within the meaning of § 1391(e)(1)(C). This Court has rejected the argument that NEPA or FLPMA challenges to public land management decisions, including BLM RMPs, "involve" real property under § 1391(e)(1)(C). *See Salazar I*, 2009 WL 1299626, at *2; *Salazar II*, 2010 WL 375003, at *2. Chief U.S. Magistrate Judge Bush of this Court recently reached a similar conclusion in the context of BLM oil and gas leasing. *See Zinke*, 2018 WL 4210774, at * 5, n. 7.

In *Salazar I*, WWP challenged several 2008 BLM RMPs and their supporting EISs from Idaho and other states across the sage-grouse range. BLM moved to dismiss WWP's challenges to the non-Idaho plans, arguing the case "involved" real property under § 1391(e)(1)(C). The parties' briefings cited a dozen or more cases—going back decades—on the meaning of this statutory provision and its predecessor. *See Salazar I,* ECF Nos. 10-2, 14, 24. The Court held that WWP's claims in *Salazar I* did not "involve" real property in the sense contemplated by the federal venue statute, explaining:

> [T]he legislative history to this statute shows that the real property limitation was added due to congressional concerns "over the local nature of some real property actions," *see* 14D Wright, Miller & Cooper, Federal Practice and Procedure, § 3815 at p. 379 n. 18, suggesting that it relates to matters of right, title, and interest. *See generally, McCloskey v. U.S Postal Service*, 1988 WL 29291 at *1 (E.D. Pa. 1988) (finding § 1391(e) inapplicable because suit did not involve "right, title, or interest to real property"). The Court finds persuasive cases that have held that environmental actions such as this are not actions in which "real property is involved." *See e.g., NRDC v. TVA*, 340 F. Supp. 400, reversed on other grounds, 459 F.2d 255 (2nd Cir. 1972). Thus, suit is proper here under § 1391(e).

2009 WL 1299626, at *2. Federal Defendants then sought reconsideration to address the then-recently issued opinion in *Center for Biological Diversity v. BLM*, No. C-08-05646, 2009 WL 1025606 (N.D. Cal. 2009) (*CBD*), which is the principal authority they rely on now as well. *See Salazar I,* ECF Nos. 29, 30.  The Court denied reconsideration after considering the *CBD* decision. *See Salazar I*, 4:08-cv-0516-BLW, ECF No. 58.

Similarly, in *Salazar II*, the Court considered WWP's challenges to numerous BLM grazing and other land management decisions in Idaho and Nevada alleged to cumulatively harm the Great Basin "core" population of greater sage-grouse. BLM again moved to dismiss for improper venue, arguing that WWP's claims "involved" real property under § 1391(e). *See Salazar II,* No. 4:08-cv-0435-BLW, ECF No. 55. BLM attempted to distinguish *Salazar I*, arguing that the challenged actions—including oil and gas leasing, geothermal development, and grazing permits—were "much more closely intertwined with real property than are Resource Management Plans." *Id.* ECF No. 55-1 at 19.  The Court denied the motion to dismiss, explaining it was "not persuaded to depart from its ruling in *Salazar* that venue exists in this Court under [] § 1391(e)[(1)(C)]." *Salazar II*, 2010 WL 375003, at *2.

Magistrate Bush's September 2018 venue decision followed *Salazar I* and *II,* and rejected the argument that NEPA and FLPMA challenges to BLM oil and gas leasing decisions involve real property under § 1391(e), explaining:

To the extent Federal Defendants argue that real property *is* involved given the very nature of oil and gas leases generally, *Salazar* holds otherwise. *See Salazar*, 2009 WL 1299626 at *2 ("[T]he legislative history to this statute shows that the property limitation was added due to congressional concerns over the local nature of some real property actions, suggesting that it relates to matters of right, title, and interest" and finding persuasive cases that have held that *environmental actions such as this are not actions in which real property is involved*.")[.]

*See Zinke*, 2018 WL 4210774, at * 5, n. 7.

These District of Idaho decisions are in accord with many other decisions holding that actions "involve real property" under § 1391(e)(1)(C) only where plaintiffs present a dispute over right, title, or interest in real property. As one court recently explained:

[B]y using the legal term 'real property,' rather than allowing venue whenever 'the action relates a particular area of land,' Congress seems to have indicated that it intended mainly to cover disputes over legal interests in real property. . . . Defendants have cited no authority finding venue improper under 28 U.S.C. § 1391(e)(1)(C) in a case that did not involve a legal dispute over real property interests, and the Court sees no reason on these facts why it should be the first to limit plaintiffs' venue options.

*Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1115–16 (N.D. Cal. 2014); *see also Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 2013 WL 120185, *2-3 (N.D. Cal. 2013) (holding that no real property was central to action challenging federal compliance with environmental laws); *Ctr. for Envtl. L. and Policy v. U.S. Bureau of Reclamation*, 2009 WL 10668581, at *2 (W.D. Wash. May 12, 2009) (concluding that the real property limitation did not apply, where the case did "not present any issues of a property right, title, or interest").

Here, Plaintiffs' claims do not involve any legal dispute over right, title, or interest in real property.  They instead seek judicial review and reversal of BLM's 2019 Plan Amendments and the related Trump Administration actions to roll back sage-grouse protections in violation of NEPA, FLPMA, and the APA. The cases cited by Federal Defendants have no bearing on such claims. *See Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983) (finding that an action involves real property if it is a "suit involving the protection or recovery of real property

or an estate therein," and holding that test was met where plaintiffs sought to compel issuance of oil and gas leases); *Landis v. Watt*, 510 F. Supp. 178, 180 (D. Idaho 1981) (finding real property was involved where plaintiff sought to compel Interior Department to reissue cancelled or rejected leases in several states). Even where oil and gas leasing is involved, the cases agree that subsection (C) does not apply if the controversy does not squarely concern right, title or interest to real property.  *See, e.g., Ashley v. Andrus*, 474 F. Supp. 495, 496-97 (D. Wis. 1979); *Santa Fe Int'l v. Watt*, 580 F. Supp. 27 (D. Del. 1984); *Shell Oil Co. v. Babbitt*, 920 F. Supp. 559, 563 (D. Del. 1996) (all affirming venue in plaintiff's home forum because right, title or interest to oil and gas leases was not directly challenged).

Defendants argue that this Court's prior rulings are wrong, however, and demand the Court instead should follow *CBD*, 2009 WL 1025606, at *2-3—which the Court addressed in denying reconsideration in *Salazar I*, as noted above.[1] Although *CBD* was wrongly decided, it is distinguishable because the federal plan challenged there involved "rights of way and easements. . . , land withdrawals, and land exchanges and acquisitions." *See* 2009 WL 1025606, at *1. *Accord Quinn*, 56 F. Supp. 3d at 1116 (distinguishing *CBD* on these grounds). In contrast here, the challenged decisions—BLM's RMP amendments and associated NEPA documents, the SFA mineral withdrawal cancellation, and revocation of compensatory mitigation as a result of an unlawful reading of FLPMA—do not present any issue of rights of way, easements, land withdrawals, or land exchanges.

The Court's prior reading of § 1391(e) was and remains correct.  This action does not

---

[1] Defendants also refer to a letter sent in 1962 by former Deputy Attorney General Byron White, which they say "was placed in the Senate Conference Report" for a prior version of Section 1391(e). *See* Defs. Br. at 5–6. However, Defendants fail to explain how this snippet of legislative history somehow overrides the numerous judicial decisions that Plaintiffs and the Court have addressed in the *Salazar I* and *II* litigation and this case.

"involve real property," so Plaintiffs have properly sued in Idaho, the home forum of Plaintiff WWP. The Court should thus deny Defendants' motion to dismiss for improper venue.

## II.     DEFENDANTS CANNOT MEET THEIR HEAVY BURDEN TO JUSTIFY A DISCRETIONARY VENUE TRANSFER.

The Court should also deny Defendants' motion for a discretionary transfer of venue pursuant to 28 U.S.C.§ 1404(a). Similar to Intervenors, Defendants argue that the Court should exercise its discretion to "sever" Plaintiffs' challenges to the 2019 BLM Plan Amendments for states other than Idaho under Fed. R. Civ. P. 21, and transfer those severed claims to district courts in the other states under § 1404(a). Such severance and transfer, of course, is highly discretionary with the Court. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271 (9th Cir. 2000); *Brian v. Wal-Mart Stores, Inc*., No. 4:14-cv-139-BLW, 2015 WL 4620839 (D. Idaho July 30, 2015) (denying motion to sever and transfer).

A discretionary transfer of venue is allowed for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Its purpose is to "prevent waste of time, energy, and money," and to protect litigants and the public from "unnecessary inconvenience and expense." *Van Dussen v. Barrack*, 376 U.S. 612, 616 (1964). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Court may weigh multiple factors in assessing a discretionary venue transfer, including: (1) convenience of the parties and witnesses; (2) familiarity of each forum with the applicable law; (3) the plaintiff's choice of forum; (4) contacts of the different parties with the forum; (5) local interest in the controversy; (6) the ease of access to sources of proof and evidence; and (7) relative congestion in each forum. *See Jones v. GNC Franchising, Inc.*, 211

F.3d 495, 498-99 (9th Cir. 2000).

Consideration of these factors requires denying Federal Defendants' motion for discretionary transfer here. As explained below, Defendants fail to carry their heavy burden of overcoming Plaintiffs' proper choice of this forum, and fail to demonstrate that the interests of justice, convenience of the parties, or other considerations support a discretionary transfer.

### A.   Plaintiffs' Choice of Forum is Entitled Substantial Deference.

Defendants argue that the Court should give "no weight" to Plaintiffs' choice of forum in the District of Idaho under § 1404(a), based on their assertion that, for the non-Idaho plan amendments, "the events giving rise to those claims occurred entirely outside of this district, and the entirety of the land subject to those claims is also outside of this district." Defs.' Br. at 18–19. That is simply wrong, and alone requires denial of the motion.

Contrary to Federal Defendants' argument that Plaintiffs' forum choice deserves "no weight," the Supreme Court has squarely held "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (same). Thus, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Moreover, a plaintiff's venue choice is entitled to more weight when the plaintiff resides in the chosen forum. *See Pac. Car and Foundry v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000), *cert. den*. 532 U.S. 941 (2001) ("While any plaintiff's selection of a forum is entitled to deference, that deference

increases as the plaintiff's ties to the forum increase").

That is the case here, as Plaintiff WWP is headquartered in Idaho, has numerous staff and members here, and has brought other cases in this judicial district to protect sage-grouse habitats and populations. *See* Compl. ¶¶ 18, 24; First Suppl. Compl. ¶ 12; *Schneider, supra; Salazar I & II, supra; Zinke, supra. See also W. Watersheds Project v. U.S. Fish and Wildlife Serv.*, No. 06-cv-277-BLW, 535 F. Supp.2d 1173 (D. Idaho 2007) (reversing "not warranted" ESA listing decision for greater sage-grouse). These facts underscore WWP's long-standing ties to this District and weigh heavily against a discretionary transfer, as the Court held in denying motions to sever and transfer in *Salazar I* and *Schneider*.[2]

### B.  Severance and Transfer Would Be Far More Inconvenient and Greatly Increase the Prospect of Conflicting Rulings.

Defendants also ignore the fact that they are not seeking transfer of the entire case to some other single forum they contend is more convenient, as is usual in venue transfer motions—including most of the cases they cite. *See* Defs.' Br. at 14–15. Instead, they ask that Plaintiffs' supplemental complaint be broken into parts and transferred to five other courts (Wyoming, Utah, Colorado, Oregon, and either Nevada or California) in two appellate jurisdictions (Ninth and Tenth Circuits).

It is difficult to understand Defendants' contention that severing and transferring Plaintiffs' supplemental claims in this way would serve the interests of convenience of the parties or the courts. Both the transferee courts and Plaintiffs would be substantially burdened and inconvenienced under this proposal. Plaintiffs would have to appear in five other

---

[2] This is thus not like cases Defendants cite where plaintiffs sued outside their home forum. *See, e.g.*, *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 3d 82, 86 (D.D.C. 2004).

jurisdictions as well as this one, instead of the sole jurisdiction they have chosen here in Idaho.

Plaintiffs would be forced to put on their case multiple times in the different venues, since

Plaintiffs' supplemental claims focus on overarching legal violations across the 2019 BLM Plan

Amendments, including the improper segmentation of NEPA analysis and BLM's failure to

address cumulative impacts and range-wide threats. Moreover, Defendants ignore the obvious

fact that their proposal would create the prospect of conflicting rulings between the many courts

they seek to involve, whereas only a single court—this Court—now presides over Plaintiffs'

supplemental claims and there is no risk of conflicting rulings.

The Court emphasized these same considerations in denying the prior venue transfer

motion in this case, explaining:

> As the litigation is now postured, this Court is the only court considering the plaintiffs'
> overarching claims in light of the entire Administrative Record. Thus, the BLM is not
> exposed to conflicting decisions on plaintiffs' overarching claims as the litigation is now
> positioned. But transferring the overarching claims to five different courts will force
> plaintiffs to make five identical arguments before five separate judges, increasing the
> potential for conflicting rulings while placing a substantial burden on plaintiffs. . . .The
> goals of promoting efficiency, avoiding conflicting rulings, and minimizing the costs and
> prejudice to the parties, would be maximized by keeping plaintiffs' claims in this Court.

*Schneider*, 2017 WL 874568, at *3.

Defendants again insist that the supplemental claims here are different than those

challenging the 2015 Plans, because the 2019 BLM Plan Amendments were approved by each

BLM State Director using separate EISs and Records of Decision (RODs). *See* Defs.' Br. at 1–3,

10. They argue that each 2019 Plan Amendment ROD and EIS will have to be evaluated

independently based on different Administrative Records, and that transfer to other courts would

serve judicial efficiencies by allowing the "local" courts to address each record individually. *Id.*

These assertions again misrepresent the thrust and nature of Plaintiffs' supplemental

claims, and ignore Plaintiffs' Motion for Preliminary Injunction—filed before the Defendants'

PLS.' OPPOSITION TO FED. DEF'S VENUE MOTION --                                    17

motion, but which they never mention. Again, Plaintiffs' opening injunction brief detailed

Plaintiffs' overarching NEPA challenges to all of the 2019 BLM Plan Amendments. *See* ECF

No. 124-1. These include common failures to evaluate reasonable alternatives, cumulative

impacts, or range-wide issues; misrepresentations about the nature and effects of the

amendments; failure to evaluate baseline conditions; and failure to prepare a Supplemental EIS

after significantly changing the proposed alternative to eliminate compensatory mitigation. *Id.*

Where Plaintiffs' injunction briefing has already articulated in detail these many reasons why all

the 2019 BLM Plan Amendments are unlawful, Defendants' refusal to even acknowledge those

overarching legal claims underscores that their motion to sever and transfer is unfounded.

   In short, Defendants' motion to sever and transfer Plaintiffs' claims to several other

courts is obviously <u>not</u> more "convenient" for either the parties or the courts, and will create—

not reduce—the risk of conflicting judicial rulings. Hence, the Court should again deny the

transfer motions under § 1404(a), as it did in *Salazar I* and *Schneider. See also Van Dusen,* 376

U.S. at 645–46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a

forum likely to prove equally convenient or inconvenient"); *Alexander v. Franklin Res., Inc.*,

2007 WL 518859 at *2 (N.D. Cal. 2007) (analysis under § 1404(a) looks to whether transfer

would avoid the duplication and waste of resources involved in having multiple actions pending

over the same issues).

   **C.  This Case Concerns National, Not Localized, Controversies about Range-wide
        Sage-Grouse Conservation.**

   Neither do the "local controversy" or convenience of witnesses and parties considerations

change the analysis under § 1404(a).

   The convenience of witnesses and ease of access to sources of proof are largely irrelevant

factors in APA cases, which are resolved upon summary judgment based on Administrative

Record materials. There will not be discovery or trial, and so the attendance of witnesses is largely irrelevant. The Court previously noted these considerations in denying venue transfer in *Salazar I*, 2009 WL 1299626, at * 3.

Finally, the issues presented in this case are not merely "local" concerns, as Defendants assert. Plaintiffs do not dispute that sage-grouse conservation has significant local and state dimensions; but Defendants avoid acknowledging that conserving sage-grouse is a range-wide matter that goes far beyond state boundaries. The very point of the 2015 Plans was to adopt adequate measures across the sage-grouse range to conserve the species and avoid ESA listing. *See* Compl. ¶¶ 25–40, 84–107. The significant rollbacks to the 2015 Sage Grouse Plans expose the greater sage-grouse to habitat and population losses locally, regionally, and range-wide, as Plaintiffs' experts Dr. Clait Braun, Dr. Jack Connelly, and Dr. Amy Haak attest in their declarations supporting Plaintiffs' preliminary injunction motion. *See* ECF Nos. 124-3, 124-5, 124-7. The First Supplemental Complaint thus presents challenges having range-wide significance, far beyond the asserted interests of the various states claimed here. The Court reached a similar conclusion in *Salazar I*, where it stated:

> Even more importantly, the issues do not break down neatly into "home" judicial districts. A key issue in this case is whether the BLM considered the cumulative impact of environmental factors acting in a widespread area stretching beyond RMP boundaries. *See Amended Complaint* at ¶ 127-28. . . . Moreover, WWP alleges that all the RMPs failed to address the cumulative impact of global warming, an impact that may extend beyond the boundaries of a judicial district. *Id.* . . . [T]he traditional desire to let disputes be resolved in their home court has less weight here where the resolving court may well be considering cumulative impacts in other judicial districts.

*Salazar I*, 2009 WL 1299626, at *3.

In *Schneider*, the Court quoted this prior analysis and again acknowledged the overarching nature of Plaintiffs' challenges. 2017 WL 87456, at *3. In *Zinke*, Magistrate Bush similarly rejected arguments that local interests in oil and gas leasing required discretionary

transfer, where Plaintiffs claimed that BLM leases threaten sage-grouse across its range, stating:

> It can reasonably be assumed, and Federal Defendants affirmatively contend, that there are state-specific interests in the discussed oil and gas lease sales. The subject-matter of this lawsuit, however, is much more expansive. Plaintiffs contend that, as to such sales (regardless of which state is involved), there are common violations of federal laws predicated on strategic policy directives from the Trump Administration, which, in turn, will result in cumulative impacts threatening sage-grouse across the sage-grouse range.

*See Zinke*, 2018 WL 4210774, at *6.

In summary, the First Supplemental Complaint presents issues of range-wide, indeed national importance, about the future of greater sage-grouse as a species and whether the Trump Administration has violated bedrock environmental laws in seeking to rescind or weaken sage-grouse protections adopted under the prior Administration. By failing to acknowledge that reality, and by instead misrepresenting Plaintiffs' supplemental claims and the relevant facts, Defendants fail to carry their burden to overcome the heavy presumption in favor of Plaintiffs' choice of forum in the District of Idaho, requiring denial of their motion to sever and transfer.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Federal Defendants motion to dismiss for improper venue or to sever and transfer venue.

Dated this 5th day of July, 2019.          Respectfully submitted,

*/s/ Laurence ("Laird") J. Lucas*
Laurence ("Laird") J. Lucas (ISB # 4733)
Todd C. Tucci (ISB # 6526)
Sarah Stellberg (ISB #10538)
*Advocates for the West*

Attorneys for Plaintiffs

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2019, I electronically filed PLAINTIFFS' BRIEF OPPOSING FEDERAL DEFENDANTS' MOTION TO DISMISS OR SEVER/TRANSFER VENUE through the CM/ECF system, which sent a Notice of Electronic Filing to the following:

Luther L. Hajek
luke.hajek@usdoj.gov
Barclay T. Samford
clay.samford@usdoj.gov
Christine Gealy England
christine.england@usdoj.gov
*Counsel for Federal Defendants*

Bret A. Sumner
bsumner@bwenergylaw.com
Malinda Morain
mmorain@bwenergylaw.com
Paul A. Turcke
pat@msbtlaw.com
Cherese De'Dominiq McLain
cdm@msbtlaw.com
*Counsel for Intervenor-Defendant Western Energy Alliance*

Caroline Lobdell
clobdell@wrlegal.org
Candice M. McHugh
cmchugh@mchughbromnley.com
Christopher Michael Bromley
cbromley@mchughbromley.com
*Counsel for Intervenor-Defendants National Cattlemen's Beef Association and Public Lands Council*

Erik Edward Petersen
erik.petersen@wyo.gov
James Kaste
James.kasted@wyo.gov
Paul A. Turcke
pat@msbtlaw.com
*Counsel for Intervenor-Defendant State of Wyoming*

Laurence M. Bogert
mbogert@parsonsbehle.com
William Gerry Myers III
wmyers@hollandhart.com
*Counsel for Amicus State of Utah, Governor Gary R. Herbert, and School and Inst. Trust Lands Admin.*

David C. McDonald
dmcdonald@mslegal.org
John L. Runft
jrunft@runftsteele.com
*Counsel for Intervenor-Defendants Wyoming Stockgrowers Association and Petroleum Association of Wyoming*

Steven W. Strack
steve.strack@ag.idaho.gov
Erika E. Malmen
Emalmen@perkinscoie.com
Brian Wonderlich
Brian.wonderlich@gov.idaho.gov
Samuel J. Eaton
Sam.eaton@gov.idaho.gov
*Counsel for Intervenor-Defendants Idaho State Legislature, Idaho Governor Brad Little*

Andrew J. Pieper
andrew.pieper@stoel.com
Beth S. Ginsberg
bsginsberg@stoel.com
Kevin J. Beaton
kjbeaton@stoel.com
Jason T. Morgan
jason.morgan@stoel.com
*Counsel for Intervenors-Defendants Idaho Power Company and Pacificorp*

/s/ *Laird J. Lucas*
Laurence ("Laird") J. Lucas (ISB # 4733)