IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, CENTER FOR BIOLOGICAL DIVERSITY, and PRAIRIE HILLS AUDUBON SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>JANICE SCHNEIDER, Assistant Secretary of Interior; BUREAU OF LAND MANAGEMENT; and U.S. FOREST SERVICE,<br><br>Defendants. | Case No. 1:16-CV-83-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the Government's motion to dismiss, or in the alternative to transfer, for improper venue. The motion is fully briefed and at issue. For the reasons explained below, the Court will deny the motion.

## ANALYSIS

The original complaint in this case was brought by four different environmental groups challenging fifteen Environmental Impact Statements (EISs) issued in 2015 that govern land covering ten western states. The gist of plaintiffs' lawsuit was that the BLM and Forest Service artificially minimized the harms to sage grouse by segmenting their analysis into 15 sub-regions without conducting

any range-wide evaluation – the agencies looked at the trees without looking at the forest, so to speak. The plaintiffs brought their claims under the National Environmental Policy Act (NEPA), the Federal Land Policy and Management Act (FLPMA), and the National Forest Management Act (NFMA).

Early in the case, the BLM filed a motion to sever and transfer arguing that, for example, the challenge to the Utah Plan should be transferred to Utah and the challenge to the Nevada Plan should be transferred to Nevada. The Court denied the motion, reasoning that "plaintiffs made overarching claims that applied to each EIS and RMP and required a range-wide evaluation that extended beyond the boundaries of any particular court." *See Memorandum Decision (Dkt. No. 86).*

As this litigation was underway, the Trump Administration came into office and began a process to review and revise the 2015 Sage-Grouse Plans. This litigation was put on hold pending that review. In 2017 that review was completed, and as a result, WWP alleges, Interior Secretary Ryan Zinke directed agencies to relax restrictions on oil and gas development in sage grouse habitat. The BLM responded by issuing amendments to the Sage Grouse Plans (referred to as the 2019 Amendments). Plaintiffs supplemented their complaint to challenge the BLM's 2019 Amendments, alleging that the agency – acting at the direction of the Trump Administration – again made common errors across numerous Plans,

**Memorandum Decision & Order – page 2**

including (1) failing to take a range-wide analysis, (2) failing to evaluate climate change impacts, and (3) generally removing protections for the sage grouse.

The Utah and Wyoming intervenors responded by filing a motion to transfer, arguing that the circumstances have changed since the Court denied the BLM's motion discussed above.[1]  The intervenors argued that the interests of justice and the interests of local concerns justified transferring, for example, the Utah Plan challenges to Utah and the Wyoming Plan challenges to Wyoming.  The intervenors argued that the challenges in this case are Plan-specific and will be unique to each State.

The Court disagreed and denied their motions.  *See Memorandum Decision (Dkt. No. 181)*.  The Court reasoned that their motions ignored the allegations of plaintiffs' complaint.  Plaintiffs allege that the challenged Plans suffer from common failings that did not result entirely from errors of local Field Offices but rather were heavily influenced by directions from the Trump Administration and the Interior Secretary.  Transferring these cases to various States would require plaintiffs to make duplicative arguments and courts to render duplicative – and perhaps conflicting – decisions.  The Court did not agree with intervenors that

---

[1] The Idaho intervenors joined in the motions, arguing that the Court can more effectively focus on issues unique to Idaho if the other matters are severed and transferred to their respective States.

**Memorandum Decision & Order – page 3**

circumstances have changed since the Court denied the Government's earlier motion to sever and transfer.

Much of the Government's motion contains arguments identical to those raised by the Utah and Wyoming intervenors and rejected by this Court. The Court will not repeat its analysis but will simply incorporate it by reference and deny those portions of the Government's motion.

The remaining issue is whether this Court is the proper venue for resolving plaintiffs' supplemental claims challenging the 2019 BLM Plan Amendments. The venue statute allows a plaintiff naming federal defendants to bring suit in "any judicial district in which . . . (3) the plaintiff resides if no real property is involved in the action." *See* 28 U.S.C. § 1391(e)(1)(C). It is undisputed that plaintiff WWP "resides" in the District of Idaho because it is incorporated and headquartered in Idaho, so venue is proper here under subsection (C) unless "real property is involved" within the meaning of the statute.

This Court has previously interpreted § 1391(e)(1)(C) to mean that "real property" is not "involved" in a lawsuit challenging an agency's compliance with NEPA and FLPMA. *See WWP v Salazar,* 2009 WL 1299626 (D.Id. May 7, 2009) (*Salazar I*). The Government responded in the *Salazar I* case by seeking reconsideration based on the then-recently issued opinion in *Center for Biological Diversity v. BLM*, 2009 WL 1025606 (N.D. Cal. 2009) (*CBD*), but the Court

denied that motion as well. *See Order (Dkt. No. 58 in CV-08-516-BLW)*. The Court later reaffirmed *Salazar I* in a separate case. *See WWP v. Salazar,* 2010 WL 375003 (D.Id. Jan. 25, 2010) (*Salazar II*), *reconsidered on other grounds,* 2011 WL 4431813 (D. Id. Sep. 22, 2011). Just two months ago, the Court reconfirmed its rulings in *Salazar I & II*. *See WWP v. Interior Board of Land Appeals,* 2019 WL 3877302 (D.Id. Aug. 16, 2019).

The Government asks the Court to revisit its prior decisions, and offers legislative history in the form of a letter from then-Deputy Attorney General Byron White observing that "[t]he principal demand for this proposed legislation comes from those who wish to seek review of decisions relating to public lands, such as the awarding of oil and gas leases, consideration of land patent applications and the granting of grazing rights or other interests in the public domain . . . and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming." *See* S. Rep. No. 87-1992, at 6 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 2784, 2789.

It certainly would be "unwise" to set venue in a court that had nothing to do with the controversy, such as a court in Maine resolving a dispute over a Wyoming lease. That is precisely what Justice White was trying to avoid and the final version of the statute was apparently intended to accommodate his concern because its language is close to his recommendation. But his concern – and that of the

statute – does not apply here where this Court is not distant from the geographical location of the dispute but is actually right in the middle of it.

The Government does not cite any Ninth Circuit cases in support of its position but once again cites the holding of *CBD* that challenges to a BLM land use plan brought under NEPA, FLPMA and the ESA did "involve real property" under the statute. *CBD* at 2009 WL 1025606 (N.D. Cal. 2009). But more persuasive is another decision from the Northern District of California issued about five years after *CBD*. *See Earth Island v. Quinn,* 56 F.Supp. 3d 1110 (N.D. Cal. 2014). In *Earth Island,* environmental groups claimed the Forest Service failed to comply with NEPA and NFMA in approving salvage logging of fire-killed trees. In holding that the action did not involve real property under the venue statute, the court held as follows:

> [B]y using the legal term 'real property,' rather than allowing venue whenever 'the action relates to a particular area of land,' Congress seems to have indicated that it intended mainly to cover disputes over legal interests in real property. . . . Most authority appears to have followed that logic, generally finding that actions "involve real property" when they involve disputes over real property interests—and perhaps not even then if the real property dispute is peripheral to the central cause of action. *See Wright, Miller & Cooper, 14D Fed. Prac. & Proc. Juris. § 3815, n. 33 (4th ed.) (citing cases)*

*Id.* at 1115-16. The decision goes on to cite with approval language from *NRDC v. TVA,* 340 F.Supp. 400 (S.D.N.Y. 1971) concerning the predecessor statute to § 1391(e)(1)(C):

> Gravity being what it is, the vast bulk of human activities take place on the face of the earth. Consequently, almost any dispute over public or private decisions will in some way "involve real property," taken literally. The touchstone for applying § 1391(e)(4) cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property.

*Id.* at 406. The Court finds persuasive the rationale of *NRDC* and of *Earth Island*. This action does not involve the right, title or interest in real property and does not threaten to place venue in a court far distant from the geographical location of the dispute. Instead, this lawsuit challenges an agency's compliance with statutory mandates. Because "real property" is not "involved" as those terms are used in the venue statute, the Court finds that venue is proper here under § 1391(e)(1)(C).

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss or, in the alternative to sever and transfer (docket no. 164) is DENIED.

DATED: October 2, 2019

B. Lynn Winmill
U.S. District Court Judge